**NATIONAL TRANSPORTATION, INC., Appellee,**

v.

**INN FOODS, INC., d/b/a Inn Foods and U.S. Food Service, a corporation, Appellant.**

No. 86–2527.

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1987.

Decided Aug. 26, 1987.

---

T. Randall Wright of Omaha, Neb., for appellant.

David D. Begley, Omaha, Neb., for appellee.

Before McMILLIAN and JOHN R. GIBSON, Circuit Judges, and MURPHY,* District Judge.

McMILLIAN, Circuit Judge.

Inn Foods, Inc., appeals from a final order entered in the District Court [1] for the District of Nebraska dismissing its counterclaim against National Transportation, Inc. (National). Inn Foods sought damages suffered when it was forced to resell at a loss foods shipped by National because the foods were defrosted. The district court found in favor of National on its claim for transportation and other costs and dismissed Inn Foods' counterclaim. *National Transportation, Inc. v. Inn Foods, Inc.,* No. CV 85-0-846 (D.Neb. Nov. 5, 1986) (Memorandum and Order). For reversal, Inn Foods argues that the district court erred in (1) holding that Inn Foods failed to make a prima facie case of carrier liability for damaged goods and (2) excluding testimony that foods kept in cold storage from 15 to 60 days would be frozen. For the reasons discussed below, we affirm.

---

* The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

National is a Nebraska corporation operating as a motor carrier in interstate commerce. Inn Foods has its principal place of business in Watsonville, California, and also does business as U.S. Food Service and Valley Packing Services.

In early July 1985, Inn Foods requested National to transport two loads of frozen foods from Watsonville to Honor Foods, Inc., in Philadelphia, Pennsylvania. Inn Foods stored the frozen foods at various commercial cold storage facilities in Watsonville because it had no cold storage facilities. The frozen foods were packed in containers that were in turn enclosed in larger boxes. National drivers loaded the boxes on to National refrigerated truck trailers, prepared bills of lading for each load, gave copies to the cold storage company and Inn Foods, and retained copies to present to Honor Foods on delivery.

The bills of lading described the food to be shipped as "780 cases of veg/fruits/seafoods" and "1,548 cases of frozen veg/fruits/seafoods." Each bill of lading contained the following notice: "This merchandise is a food product requiring handling at a temperature of zero degrees fahrenheit or lower." Each bill of lading also contained the following provision: "The property described below is in apparent good order, except as noted (content and condition of content of packages unknown) ... which said carrier ... agrees to carry to its usual place of delivery or destination."

The first load of foods left California on July 12, 1985, and was delivered to Honor Foods on July 22, 1985. The second load left July 18, 1986, and arrived in Philadelphia on July 24, 1986. The operations manager for Honor Foods testified that upon arrival at Honor Foods, a number of the boxes of frozen foods were visibly defrosted, and the boxes on the bottom were crushed and in an unfrozen state. The operations manager ordered a number of boxes opened and inspected and their temp-

erature determined by the use of pulp thermometers. The temperature in some of the boxes was as high as 35 to 45 degrees fahrenheit. Honor Foods rejected the foods because they were not frozen and refused to pay National for transportation costs.

An inspector from the Pennsylvania Department of Agriculture testified by deposition that he examined a number of the boxes shortly after their arrival at Honor Foods and found the boxes to be wet or sweated and the foods inside to be "bendable and smashy-like or smushy." The inspector determined that the foods, although thawing, were still edible. National drivers then took the foods to United States Cold Storage of Philadelphia where they were blast-frozen and stored. Inn Foods subsequently sold the foods at a loss to Peltz Foods in New York.

National billed Inn Foods for the transportation, blast-freezing and storage costs. When Inn Foods refused to pay the bill, National brought suit to recover these costs. Inn Foods counterclaimed for $4,218.08, the difference between the price Honor Foods had agreed to pay and the price Peltz Foods paid for the foods. The district court dismissed Inn Foods' counterclaim on the ground that Inn Foods failed to present prima facie evidence that the foods were frozen at the time they were delivered to National. *National Transportation, Inc. v. Inn Foods, Inc.*, slip op. at 6. The district court noted that Inn Foods did not offer evidence concerning the manner in which the foods had been stored prior to delivery to National. *Id.* at 7–8. Inn Foods appeals from the district court's dismissal of its counterclaim.

Inn Foods' counterclaim is brought under the "Carmack Amendment" to the Interstate Commerce Act, 49 U.S.C. § 11707(a)(1), which provides that a carrier is liable to the shipper for the actual loss or injury to the shipper's property caused by the carrier.[2] In an action to recover for

---

**2.** 49 U.S.C. § 11707(a)(1) provides in part:
That carrier or freight forwarder and any other common carrier that delivers the property and is providing transportation or service

... are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the

loss, the shipper must establish that (1) the shipper delivered goods to the carrier, (2) the goods were in good condition at the time of delivery, (3) the goods arrived in damaged condition, and (4) the shipper suffered damages. *Id; Missouri Pacific R.R. v. Elmore & Stahl*, 377 U.S. 134, 138, 84 S.Ct. 1142, 1145, 12 L.Ed.2d 194 (1964).

Inn Foods first contends that the district court erred in holding that it failed to establish a prima facie case that the goods were frozen at the time of delivery to National. Inn Foods argues that the district court improperly relied on this court's decision in *Pillsbury Co. v. Illinois Central Gulf R.R.*, 687 F.2d 241 (8th Cir.1982) (*Pillsbury*), because the goods in *Pillsbury* were under seal when delivered to the carrier and thus not open for inspection by the carrier. Inn Foods relies on this court's decision in *Kaiser Aluminum & Chemical Corp. v. Illinois Central Gulf R.R.*, 615 F.2d 470 (8th Cir.), *cert. denied*, 449 U.S. 890, 101 S.Ct. 249, 66 L.Ed.2d 116 (1980) (*Kaiser*), for the rule that a clean bill of lading is prima facie evidence of the condition of the goods upon delivery to the carrier. Inn Foods argues that National issued a clean bill of lading and that this undisputed evidence established Inn Foods' prima facie case.

■ A clean bill of lading is evidence of delivery in good condition only as to those goods which the carrier can visually observe or inspect. *D.P. Apparel Corp. v. Roadway Express, Inc.*, 736 F.2d 1, 4 (1st Cir.1984) (*D.P. Apparel*); *Pillsbury*, 687 F.2d at 244. Where the goods are under seal or otherwise packaged in such a way that they are not visible to the carrier, the shipper must produce other evidence to show delivery in good condition. In *Pillsbury*, this court held that a bill of lading indicating the goods were in "apparent good order" was insufficient to establish delivery in good condition because the goods (flour) were under seal. 687 F.2d at 243–44. The shipper in *Pillsbury* presented evidence not only that the bill of lading was clean, but also that no beetles were found in the packages of flour, that the

actual loss or injury to the property caused by

railroad cars had been fumigated and cleaned prior to loading, and that the carrier had a beetle infestation at its yards. *Id.* at 245. It was this cumulative evidence which established delivery in good condition. *Id.*

■ This court in *Kaiser* held that a bill of lading acknowledging receipt of goods in apparent good order with no exceptions noted is sufficient to establish delivery in good condition of goods open to inspection. 615 F.2d at 475. The court, however, held that the following evidence presented by the shipper established delivery in good condition: the bill of lading acknowledging receipt of the goods in good order, the admission of the carrier's manager that the contamination had been caused by the carrier, the absence of records indicating that the carrier had cleaned the railroad cars, and the shipper's inspection of the goods as they were loaded. *Id.*

In *D.P. Apparel*, 736 F.2d at 4, a case very similar to the present case, the First Circuit held that a clean bill of lading and the testimony of the shipper's agent concerning the shipper's usual and customary inspection of its goods was insufficient to establish delivery in good condition. The shipper delivered to the carrier for shipment cloth which was wrapped in opaque material. The shipper's agent admitted that he did not have personal knowledge of the condition of the cloth delivered to the carrier. The documents submitted by the shipper indicated merely that the cloth had passed quality control tests prior to shipment. *Id.* The First Circuit held that the shipper failed to present prima facie evidence of delivery in good condition because the shipper failed to offer direct and affirmative proof of the condition of the cloth when delivered. *Id.*

We hold that the district court did not clearly err in holding that Inn Foods failed to present prima facie evidence that the foods were in good condition when delivered to National. *See Kaiser*, 615 F.2d at 474. As noted above, the bill of lading is evidence of delivery in good condition only

(1) the receiving carrier....

as to those goods which are visible and open to inspection. In this case, the frozen foods were inside boxes and the condition of the goods could not be observed. In addition, the bill of lading expressly stated that the carrier was unaware of the condition of the contents of the packages. Inn Foods offered no other evidence concerning the condition of the goods upon delivery.

Inn Foods next argues that the district court erred in excluding the testimony of the traffic manager for Inn Foods that foods kept in cold storage for 15 to 60 days would be frozen at the time of delivery. The district court sustained an objection to the following question: "And in your experience, would goods that have been kept in cold storage as long as these goods have, that is for 15 to 60 days, normally be frozen when they are loaded on the truck?" The district court stated: "What we are interested in is this load. If he knows something about this load, I will permit him to testify." Inn Foods argues that the excluded evidence would have established the condition of the goods upon delivery to National, an essential element of its prima facie case.

National argues that the district court correctly excluded the evidence because the traffic manager had no personal knowledge and could not testify concerning the actual conditions which existed at the public warehouse where the foods were stored.

■ The district court is accorded considerable discretion in determining what evidence to admit. The district court's decision will be overturned only if the court has abused its discretion. We hold that the district court did not abuse its discretion in excluding the testimony of the traffic manager. The district court clearly stated the traffic manager could testify to the condition of the goods at the time they were delivered to National.

Accordingly, the judgment of the district court is affirmed.