**ACCURA SYSTEMS, INC.,**
Plaintiff–Appellee,

v.

**WATKINS MOTOR LINES, INC.,**
Defendant–Appellant.

No. 95–10795.

United States Court of Appeals,
Fifth Circuit.

Nov. 5, 1996.

Billy Michael Chitty, B. Michael Chitty, Attorney at Law, Terrell, TX, for Plaintiff–Appellee.

Lawrence J. Roberts, Hinshaw & Culbertson, Miami, FL, for Defendant–Appellant.

Before PARKER and SMITH, Circuit Judges, and JUSTICE,[1] District Judge.

JUSTICE, District Judge:

Defendant-appellant, Watkins Motor Lines, Inc. ("Watkins"), appeals the district court's judgment in favor of the plaintiff, Accura Systems, Inc. ("Accura"). Watkins presents three issues on appeal: whether the award of attorney's fees was proper in an interstate freight damage case, whether Accura met its burden of proving the "delivery to carrier in good condition" element of its *prima facia* case, and whether the district court should have awarded Watkins all of its unpaid freight charges. "The award of attorney's fees to Accura will be reversed and vacated; the finding that Accura proved 'delivery to carrier in good condition' will be affirmed; and the award of unpaid freight charges to Watkins will be reversed and remanded."

## FACTS AND PROCEDURAL HISTORY

On July 14, 1994, Accura (as shipper) tendered to Watkins (as carrier) at Sunnyvale, Texas, twelve packages of specially coated aluminum building materials, including panels and accessories, for shipment to Apex Curtain Wall Group in Universal City, California.

On or about July 19, 1994, the shipment was delivered to Apex Curtain Wall Group in California and exceptions were noted to the condition of the shipment. Most of the individual panels were damaged with scratches, gouges, and dents.

Accura brought suit seeking to recover for the damages to the building panels. Watkins counterclaimed for freight charges which Accura had withheld on the ground that the freight damage claim entitled it to an allowance or set-off against Watkins.

After a bench trial on the merits in the district court, judgment was entered in favor of Accura in the amount of $15,807.07, less an offset of $1,073.58 for a portion of the freight charges sought by Watkins. The judgment also provided for an award of attorney's fees to Accura.

## STANDARD OF REVIEW

Watkins appeals from judgment entered by the district court. This court reviews the district court's findings of fact for clear error and legal issues *de novo. Joslyn Mfg. Co. v. Koppers Co., Inc.,* 40 F.3d 750, 753 (5th Cir.1994).

## DISCUSSION

1. Attorney's fees

■ This case was brought under the Carmack Amendment, 49 U.S.C. § 11707,[2] which codifies an initial carrier's liability for goods lost or damaged in shipment. The Carmack Amendment generally preempts state law claims arising out of the shipment of goods by interstate carriers. *Moffit v. Bekins Van Lines Co.,* 6 F.3d 305 (5th Cir.1993).

■ This Circuit has held that attorney's fees authorized by state law are not available in Carmack Amendment actions. *Strickland Transp. Co. v. American Distributing Co.,* 198 F.2d 546, 547 (5th Cir.1952). The *Strickland* court rejected the plaintiff's attempt to plead attorney's fees in order to meet the jurisdictional limits for removal under the Carmack Amendment. This holding has more recently been relied upon to deny the award of attorney's fees in a railroad shipping case:

> There is no provision of the Interstate Commerce Act which authorizes recovery of attorney's fees in a lawsuit to collect unpaid tariff charges. We find the decision disallowing recovery of attorney's fees in freight damage suits to be persuasive.

*Missouri Pac. R.R. Co. v. Center Plains Indus., Inc.,* 720 F.2d 818, 819 (5th Cir.1983).

Accura relies upon *Farmland Industries Inc. v. Andrews Transport Co.,* 888 F.2d 1066

---

1. District Judge of the Eastern District of Texas, sitting by designation.

2. Effective January 1, 1996, the Carmack Amendment was recodified at 49 U.S.C. §§ 11706, 14706, 15906.

(5th Cir.1989). In *Farmland*, this court ordered an award of attorney's fees under Texas law in a state law breach of contract case, and noted:

> Attorney's fees may likewise be recoverable for the failure of a common carrier to deliver goods, since they fall in the "lost freight" category [of the state statute].

*Id.* at 1068. The rights vindicated in *Farmland* were state contract rights; the court did not reach any federal questions and did not apply the Carmack Amendment.

Accura also relies upon *A.T. Clayton & Co., Inc. v. Missouri–Kansas–Texas Railroad Co.*, 901 F.2d 833 (10th Cir.1990), and *Missouri, Kansas & Texas Railway Co. of Texas v. Harris*, 234 U.S. 412, 34 S.Ct. 790, 58 L.Ed. 1377 (1914). In *Clayton*, the Tenth Circuit held that the Carmack Amendment did not preempt an Oklahoma statute allowing recovery of attorney's fees. In reaching its conclusion, the Tenth Circuit focused on "whether the state statute substantively enlarges the carrier's responsibility for the loss." *Clayton*, 901 F.2d at 835. The court reasoned that the Oklahoma attorney's fees statute should apply because it "is incidental to and consistent with the overall purpose of the Carmack Amendment since it promotes settlement, encourages small well-founded claims, and discourages unnecessary litigation." *Id.* at 835.

The Tenth Circuit's holding in *Clayton* depends, in part, upon the Supreme Court's holding in *Harris* that a Texas attorney's fee statute was not preempted by the Carmack Amendment. The Supreme Court noted that state laws enacted under the reserve powers are "not to be set aside as inconsistent with an act of Congress, unless there is actual repugnancy." *Harris*, 234 U.S. at 419, 34 S.Ct. at 793. Because the Texas statute "[did] not in anywise enlarge or limit the responsibility of the carrier for the loss of property," it was not preempted. *Id.* at 421, 34 S.Ct. at 794. Watkins distinguishes *Harris* by noting that the statute at issue there only allowed claims "not exceeding $200 in amount." *Id.* at 415, 34 S.Ct. at 791. The plaintiff in *Harris* recovered a ten dollar attorney's fee on a three dollar and fifty cent judgment. *Id.*

A recent district court decision from this circuit, *Earl's Offset Sales & Service Co. v. Bekins/EDC, Inc.*, 903 F.Supp. 1148 (S.D.Tex.1995), holds that the Carmack Amendment preempts the Texas attorney's fee statute. The district court relies on the holding of *Adams Express Co. v. Croninger*, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913), that the Carmack Amendment "supersedes all state laws" of carrier liability for interstate shipments. *Id.* at 505–07, 33 S.Ct. at 152. This holding is expressly distinguished by the Supreme Court in *Harris*, 234 U.S. at 420, 34 S.Ct. at 793–94. The district court distinguished *Harris* by contrasting the "potentially unlimited recovery of attorney's fees" under the Texas statute with the limited fees available under the statute approved in *Harris*. *Earl's Offset*, 903 F.Supp. at 1150. The district court rejected *Clayton* because the Oklahoma state courts, unlike the Texas state courts, have held that the state attorney's fee statute is not preempted by the Carmack Amendment. *See Southwestern Motor Transp. Co. v. Valley Weathermakers, Inc.*, 427 S.W.2d 597 (Tex.1968); *Yellow Freight Sys., Inc. v. North Am. Cabinet Corp.*, 670 S.W.2d 387 (Tex.App.—Texarkana 1984, no writ).

In light of the holding in *Strickland Transportation Co. v. American Distributing Co.*, 198 F.2d 546, 547 (5th Cir.1952), we reverse and vacate the award of attorney's fees.

### 2. Sufficiency of proof that goods were delivered to carrier in good condition

■ A plaintiff shipper seeking damages from a carrier for injury to a shipment may make out a *prima facia* case by showing "delivery in good condition, arrival in damaged condition, and the amount of damages." *Missouri Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 138, 84 S.Ct. 1142, 1145, 12 L.Ed.2d 194 (1964). Watkins argues that Accura's evidence did not establish delivery in good condition.

The goods at issue were delivered to Watkins already wrapped. The packaging consisted of polyform sheeting around the individual panels, which were then stacked on pallets. The stacked goods were then

wrapped in stretch-wrap and cardboard, which was secured with metal bands. The panels were neither painted nor packaged by Accura, but by a contractor, Texas Finishing.

■ To show delivery in good condition, Accura first relies on the bill of lading, which shows receipt of the goods by Watkins "in apparent good order, except as noted (contents and conditions of contents of packages unknown)."

■ This Circuit has held that a bill of lading is *prima facia* evidence of delivery in good condition, but that bill of lading with an "apparent good order" clause is evidence "only as to those portions of the shipment which are visible and open to inspection." *Spartus Corp. v. S/S Yafo,* 590 F.2d 1310, 1319 (5th Cir.1979); *see also D.P. Apparel Corp. v. Roadway Exp., Inc.,* 736 F.2d 1 (1st Cir.1984); *Blue Bird Food Prods. Co. v. Baltimore & Ohio R.R.,* 474 F.2d 102 (3d Cir. 1973); *Hoover Motor Express Co. v. United States,* 262 F.2d 832 (6th Cir.1959). Other courts have reached the same conclusion, although using language which refers only to goods under seal. *Pillsbury Co. v. Illinois Cent. Gulf R.R.,* 687 F.2d 241, 244 (8th Cir. 1982); *see also Blue Bird,* 474 F.2d at 104–05 (discussing whether goods "under seal" are "open and visible"). In *Spartus,* the goods were sealed and not available for inspection; in order to recover, the court held, the shipper would have to present "proof from elsewhere" of delivery in good condition. *Id.* While the goods at issue here were not under seal, they were similarly obscure to the carrier. *See D.P. Apparel,* 736 F.2d at 4 n. 4 (rejecting distinction between goods delivered under seal and goods not open and visible); *National Transp., Inc. v. Inn Foods, Inc.,* 827 F.2d 351, 354 (8th Cir.1987) (equating "under seal" with "not visible"). In light of the language of *Spartus,* and Accura's failure to articulate a distinction between goods under seal and goods not open and visible, Accura's presentation of the bill of lading is not, in itself, sufficient proof of delivery in good condition.

■ In addition to the bill of lading, however, Accura presented two witnesses on the condition of shipment at delivery. Frank Finan, Executive Vice–President of Accura, testified that he untaped the packaging to expose the surface of the materials on the top and the perimeter of the stack of goods. Finan and Ron Candler, Accura's Vice–President in charge of Manufacturing, each testified that Texas Finishing, the company which painted and packed the materials, had done similar work for Accura for six years without any problems.

Accura also produced evidence of the condition of the materials at delivery. The packaging was disturbed and strewn around the inside of the trailer, some of the metal bands were broken, and the aluminum panels were damaged with scratches, gouges and dents. Of the 104 panels in the shipment, 97 were damaged in some way and 88 were totally unusable.

■ In this Circuit, the plaintiff's evidentiary burden when goods are not visible or open for inspection has been termed "adequate proof," *Frosty Land Foods Int'l, Inc. v. Refrigerated Transp. Co., Inc.,* 613 F.2d 1344, 1347 (5th Cir.1980), or proof "by a preponderance of the evidence," *Spartus,* 590 F.2d at 1319. Other circuits have required "direct and affirmative proof," *D.P. Apparel Corp.,* 736 F.2d at 4, "other evidence," *National Transp.,* 827 F.2d at 354, or "additional evidence sufficient to establish by a preponderance of all the evidence the condition of the goods upon delivery," *Pillsbury,* 687 F.2d at 241.

■ Watkins argues that Accura should have carried its burden with evidence from someone with personal knowledge of the condition of the building panels immediately before they were packaged, but does acknowledge that circumstantial evidence can be used to show delivery in good condition. *See, e.g., Frosty Land,* 613 F.2d at 1347; *Fine Foliage of Florida, Inc. v. Bowman Transp.,* 901 F.2d 1034 (11th Cir.1990) (holding that "substantial and reliable" circumstantial evidence can show delivery in good condition).

*Frosty Land* involved a shipment of beef which, when delivered, had gone bad. 613 F.2d at 1346. This circuit held the jury's finding of delivery in good condition was supported by sufficient evidence where the

plaintiff presented evidence that the shipper, United States Agriculture inspectors, and military inspectors inspected all meat at the facility; that the plant itself had been inspected by the Department of Agriculture; that beef from the same source had been shipped to other facilities and customers without complaint; and that the type of injury which came to the beef was not consistent with the carrier's explanation of the damage. *Id.* at 1347.

Watkins attempts to distinguish *Frosty Land* by arguing that a court may turn to circumstantial evidence only where direct evidence is not forthcoming or unavailable. This argument is without support in the caselaw and would not, in any case, dictate a different result.

Watkins next argues that Accura presented no evidence, other than the bill of lading, of delivery in good condition. Finally, Watkins argues that Accura failed to carry its burden of proof. In support of these two arguments, Watkins notes that its witness, Mr. Fiske, and Accura's witnesses, Finan and Candler, had no direct knowledge of the condition of the shipment at the time it was tendered to Watkins. Watkins argues that the evidence of a history of good performance by Texas Finishing, and the photographs showing the changed condition of the packaging at arrival, cannot establish delivery in good condition.

■ Other courts have rejected evidence of general shipping practices. For example, the court in *D.P. Apparel* reasoned that evidence of general shipping practices was not evidence of a particular shipment's condition on delivery. 736 F.2d at 4. *See also National Transp.*, 827 F.2d at 355 (affirming district court's exclusion of evidence where witness had no actual knowledge of conditions at warehouse where shipment had been stored). This Circuit has, however, allowed general evidence of plant conditions and quality control to support a finding that a particular shipment was delivered in good condition. *Frosty Land*, 613 F.2d at 1347.

Watkins relies on *Spartus* for the proposition that damage on arrival may not be used to establish damage on delivery. While this general statement has some logical appeal, it

is not directly supported by *Spartus*. In *Spartus*, the Fifth Circuit held that a shipper failed to carry its burden where it presented evidence of damage on arrival and evidence that the damaged goods were exposed to "enough rainfall to account for the damage" while in the carrier's possession. *Spartus*, 590 F.2d at 1319. The court noted that there was also evidence in the record that the goods were exposed to a substantial amount of rain before delivery to the carrier. The court did not forbid consideration of arrival condition; instead, it found that, in light of the alternate explanation for the damage, the shipper failed to carry its burden of proof. Moreover, the evidence on which Accura relies is not simply damage to goods on arrival, but damage to goods and their shipping materials where there is direct evidence that the shipping materials were in good order on delivery.

Finally, Watkins relies heavily on *D.P. Apparel*. In that case, the shipper introduced evidence that the rolls of cloth at issue had passed quality control checks, and testified as to how the rolls were packaged. Like the building materials here, the cloth was loaded onto pallets and wrapped in shrink-wrap before delivery to the carrier. 736 F.2d at 4. The First Circuit held that where only this evidence was presented, the district court was within its discretion to grant a motion for rule 41(b) dismissal before the close of the plaintiff's case. While the facts of *D.P. Apparel* are quite similar to those before the court, the plaintiff here presented additional evidence of a problem-free history with the packager, and of damage to the shipping materials suggesting that damage to the goods happened in transit.

■ In this action, the district court relied on circumstantial evidence to find that Accura had met its burden of showing delivery in good condition. Its reliance on circumstantial evidence is consistent with decisions in this Circuit. *Frosty Land*, 613 F.2d 1344; *Spartus*, 590 F.2d 1310. Unless this finding is clearly erroneous, it should be upheld. *Spartus*, 590 F.2d at 1319; *Fine Foliage*, 901 F.2d at 1039; *National Transp.*, 827 F.2d at 354; *see also Frosty Land*, 613

F.2d at 1347 (applying substantial evidence test to jury's finding that shipper had shown delivery in good condition). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *see also Lewis v. Timco, Inc.*, 736 F.2d 163, 166 n. 2 (5th Cir.1984). The district court looked to evidence of delivery with packaging materials in good condition, arrival with packing materials in damaged condition, and a history of problem-free packing, to find that the goods were delivered in good condition. The district court's holding is affirmed.

### 3. Watkins's unpaid freight charges

■ At trial, Watkins sought to have the damage award against it reduced by the amount of freight charges owed Watkins by Accura. The district court ruled that Watkins was entitled to a $1,073.58 offset, representing base freight charges, but refused to award an additional $820.93 in tariff charges. These additional charges accrued under the terms of the tariff when Accura failed to pay the freight charges due Watkins during the tariff "discount period." Accura withheld payment, and thereby lost the discount, on the basis of its damage claim against Watkins.

■ Watkins argues that the filed rate doctrine precludes Accura's defense:

Under the Interstate Commerce Act, the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it.... The rule is undeniably strict and it may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of the interstate commerce to prevent unjust discrimination.

*Louisville & Nashville R.R. Co. v. Maxwell*, 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915). Hence, the Interstate Commerce Act "requires carrier to collect and consignee to pay all lawful charges duly prescribed by the tariff." *Louisville & Nashville R.R. Co. v. Rice*, 247 U.S. 201, 202, 38 S.Ct. 429, 429, 62 L.Ed. 1071 (1918).

Accura does not argue that the charges were inconsistent with the tariff or that the tariff was not properly filed. Instead, it asserts a right of recoupment, relying on *Pennsylvania R.R. Co. v. Miller*, 124 F.2d 160 (5th Cir.1941), *cert. denied*, 316 U.S. 676, 62 S.Ct. 1047, 86 L.Ed. 1750 (1942). In *Miller*, the Fifth Circuit did allow a recoupment defense to a claim for unpaid freight charges. Recoupment is a defense, analogous to a counterclaim, "which lessens or defeats any recovery by the plaintiff." *Id.* at 162. *Miller* is distinguishable from the action here, as the recoupment claim for freight damages, absent the limitations defense, could have been asserted independently. *Id.* at 162. Accura, on the other hand, presents no cause of action independent of recoupment by which it may recover. Accura cites no other authority to support the assertion of an equitable defense to a freight charge recovery action.

The Supreme Court, addressing recoupment in tariff recovery cases, has recognized a right of recoupment where the Interstate Commerce Act gives shippers an "express cause of action." *Reiter v. Cooper*, 507 U.S. 258, 262, 113 S.Ct. 1213, 1217, 122 L.Ed.2d 604 (1993). In so doing, the Supreme Court distinguished the defensive assertion of a *statutory* right of recovery from the assertion of "common-law claims and defenses such as ignorance, estoppel, or prior agreement to a different rate" which are barred by the filed rate doctrine. *Id.* 265–67, 113 S.Ct. at 1219.

■ Equitable defenses to the collection of filed tariffs have been regularly rejected by the courts. In *Southern Pacific Transportation Co. v. Commercial Metals Co.*, 456 U.S. 336, 102 S.Ct. 1815, 72 L.Ed.2d 114 (1982), the Supreme Court rejected a shipper's equitable defense based on the carrier's failure to comply with Interstate Commerce Commission credit regulations. This Circuit has rejected equitable estoppel as a defense where a railroad collected a hazardous material tariff after assuring a shipper that the

hazardous materials charge would not be assessed. *Illinois Cent. R.R. v. Golden Triangle Wholesale Gas Co.,* 586 F.2d 588 (5th Cir.1978); *see also Inman Freight Sys., Inc. v. Olin Corp.,* 807 F.2d 117 (8th Cir.1986) (rejecting estoppel defense to collection of full applicable rate); *Louisville & Nashville R.R. Co. v. Mead Johnson & Co.,* 737 F.2d 683, 689 (7th Cir.), *cert. denied,* 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 320 (1984) (enforcing published rate where both shipper and carrier believed lower rate applied).

While this action does not appear to involve a risk of discriminatory pricing—the concern which underlies the filed rate doctrine—it nonetheless falls under the rule. In *Mead Johnson,* the Eighth Circuit observed:

> To ensure the achievement of the [Interstate Commerce] Act's purposes, the terms in which the Act is framed reach well beyond those purposes. Although the courts have frequently recognized the harshness and absurdity that may result from the strict construction of the Act, Congress has not amended it. The wisdom of the Act's policy of insisting first and foremost upon uniformity of interstate freight rates is not before us, and we are obliged to enforce the act as written by Congress and interpreted by the Supreme Court.

*Mead Johnson,* 737 F.2d at 690. The filed rate doctrine bars equitable and common-law defenses to the collection of lawful tariffs, and Accura fails to offer any non-equitable defense to Watkins' claim. The district court's decision is reversed, and the matter is remanded with instructions to enter judgment in favor of the Watkins for the entire amount owed under the tariff: $1,894.51.

## CONCLUSION

For the foregoing reasons, the award of Accura attorney's fees is REVERSED AND VACATED; the finding that plaintiff met its burden of proving "delivery to carrier in good condition" is AFFIRMED; and the issue of Watkins's unpaid freight charges is REVERSED AND REMANDED.