Motion for Rehearing Overruled and Opinion of June 12, 2003 Withdrawn,
Reversed and Remanded and Opinion filed September 23, 2


















Motion for
Rehearing Overruled and Opinion of June 12, 2003 Withdrawn, Reversed and Remanded and Opinion
filed September 23,
 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-01-00531-CV

____________

 

D. M. DIAMOND CORPORATION, Appellant

 

V.

 

DUNBAR ARMORED, INC. and P. C.
BROWN, Appellees

 

_______________________________________________________

 

On Appeal from
the 61st District Court

Harris County, Texas

Trial Court
Cause No. 00-08803

 

_______________________________________________________

 

O P I N I O
N   O N  
M O T I O N   F O R   R E H E A R I N G  

            Our opinion of June 12, 2003 is
withdrawn, and this opinion is issued in its place. 

            Appellees’
motion for rehearing urges that the recent opinion of the Texas Supreme
Court in Delta Airlines, Inc. v. Black,
46 Tex. Sup. Ct.
J. 872 (June 28, 2003), speaks
to the breach of contract claim asserted in appellant’s first issue, and
requires affirmance of the summary judgment.  We disagree. 
The motion for rehearing is overruled; the summary judgment is reversed
and the cause is remanded to the trial court.

            This appeal centers on the law
applicable to the loss of a package of diamonds shipped in interstate
transport.

            Appellant, D. M. Diamond Corporation
(“DM”), a shipper, appeals a take-nothing summary judgment in favor of appellees, Dunbar Armored, Inc., an interstate carrier, and
its employee, P. C. Brown (collectively, “Dunbar”).  DM asserts nine issues on appeal.  

            Because we find the trial court
erred in determining both (1) that the Carmack
Amendment[1] to
the Interstate Commerce Act (“the Carmack”) governed
the underlying shipment, rather than the Air Deregulation Act[2]
(“the ADA”), and (2)
that certain of DM’s causes of action were barred by federal preemption, we
reverse and remand.

Background and Procedural History

            DM is a
wholesale diamond merchant.  Dunbar is both a
motor carrier and indirect air freight carrier. 
Since 1995, DM and Dunbar have operated together under a Service
Contract whereby Dunbar provides pickup and overnight
delivery of sealed packages containing precious stones and other valuables for
DM.  Pursuant to the Service Contract, DM
called on Dunbar to transport from Houston to New York
 City a package of diamonds that DM had received on
consignment from merchants in New York
 City.  A DM
representative filled out a Dunbar air bill
for delivery, including a declaration that the value of the package was
$30,000.  Brown, Dunbar’s
employee, picked up the package on February 19, 1999. 
On March 1,
 1999, Dunbar invoiced DM for the delivery; DM
paid Dunbar’s invoice on March 16, 1999.  

            The New York
 City merchants’ invoice to DM would have been due on or
about May 19, 1999, if DM did
not return the consigned diamonds.  On May 26, 1999, the merchants faxed DM a
request for payment.  Unaware that Dunbar had not
delivered the package, DM contacted Dunbar that same
day or the next, and requested a copy of the signed air bill to show DM’s
consignor that the package had been delivered.

            Over the next several months, Dunbar repeatedly
assured DM that it had the signed air bill, that it was continuing to look for
it, and that it was encountering delays in locating it due to a move of its
storage warehouse.  On June 25, 1999, Dunbar promised
DM in writing that it would locate the signed air bill by June 28, 1999.  However, Dunbar never
produced the signed air bill.

            On July 6, 1999, approximately five months after Dunbar picked up
the package from DM for delivery, DM filed a formal written claim of loss with Dunbar.  A little over a month later, on August 9, 1999, Dunbar denied
DM’s claim, invoking paragraph five of the Terms and Conditions of the Service
Contract as its basis.  Paragraph five
states: 

Within ten (10) days after discovery of any loss, but in no event more
than thirty (30) days after delivery to Dunbar of the . . . valuable articles
in connection with which such claim is asserted, [DM] shall give notice of
claim in writing to Dunbar.  If [DM]
fails to comply with these conditions, [DM] agrees that all claims against Dunbar relating to the lost items
are deemed waived and released.

 

(hereinafter the “30-Day Rule”).

                                                                 DM’s Lawsuit

            DM sued Dunbar, alleging
breach of contract, breach of warranty, violation of the DTPA[3],
fraud, ambiguity/unreasonableness, estoppel/waiver as
to the 30-Day Rule, and waiver of the Carmack’s
preemption of state law regulation and limitation of carrier’s liability to
shippers.  Dunbar answered
and filed a motion for summary judgment. 

                                        Dunbar’s Motion for Summary Judgment

            Dunbar’s motion for summary judgment
asserted that: (1) the Carmack applies and preempts
all of DM’s state law claims; (2) DM’s claim of loss is limited to the amount
it declared as the value of the package contents[4]; (3) DM’s
claims are barred because DM failed to comply with the 30-Day Rule; and, in the
alternative, (4) there is no evidence that Dunbar breached the Service
Contract.  

                                    DM’s Motion for Partial Summary Judgment

            DM filed a motion for partial
summary judgment, asserting: (1) a bailment and Dunbar’s
negligence; (2) Dunbar’s breach of the contract, and,
alternatively; (3) Dunbar’s presumptive liability under the Carmack for picking up the package and failing to deliver
it. 

                       DM’s Response to Dunbar’s Motion for
Summary Judgment

            DM also filed a response to Dunbar’s
motion for summary judgment, arguing that: (1) Dunbar waived the Carmack’s protection from civil actions by its
draftsmanship of section 13 of the Service Contract; (2) the 30-Day Rule “fails
because it is ambiguous, oppressive and void” under both federal and state
statutes because it conflicts with the Carmack’s
requirement that “[a] carrier may not provide by rule, contract, or otherwise,
a period of less than 9 months for filing a claim against it under this section
. . .;”[5] (3)
the Carmack does not preempt pre-contract DTPA
misrepresentations; (4) Dunbar was barred by estoppel
and quasi-estoppel from relying on, and had waived
its right to assert, the 30-Day Rule; (5) the Service Contract’s 30-Day Rule is
ambiguous and unreasonable because no provision is made for a loss discovered
more than 30 days after Dunbar accepts goods for delivery; (6) the limitation
of liability violates the DTPA; and (7) evidence exists to support DM’s claims
for breach of contract, DTPA, and bailment. 


            The trial court granted Dunbar’s motion
for summary judgment and denied DM’s motion for partial summary judgment.  DM appeals only the trial court’s granting of
Dunbar’s motion for summary judgment.

Standard of
Review

            In order to prevail on summary
judgment, a defendant/movant must disprove at least
one essential element of each of the plaintiff’s causes of action.  Riddick v. Quail Harbor Condo. Ass’n, Inc., 7 S.W.3d 663, 669 (Tex.
App.—Houston [14th Dist.] 1999, no pet.).

            We review a summary judgment by
applying the following well-established rules: (1) the movant
has the burden of showing that there is no genuine issue of material fact and
that it is entitled to judgment as a matter of law; (2) in deciding whether
there is a disputed material fact issue precluding summary judgment, evidence
favorable to the nonmovant will be taken as true; and
(3) every reasonable inference must be indulged in favor of the nonmovant and any doubts must be resolved in favor of the nonmovant.  Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997).  

            In considering grounds for reversal
on appeal, we are limited to those grounds expressly set forth in the summary
judgment motions, answers, or other responses. 
Tex. R. Civ. P. 166a(c); McConnell v. Southside Indep. Sch. Dist.,
858 S.W.2d 337, 341 (Tex. 1993)
(plurality opinion)[6]
(citing City of Houston v. Clear Creek
Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979); Clemons v. State Farm Fire and Cas. Co., 879 S.W.2d 385, 390 (Tex. App.—Houston [14th Dist.] 1994, no writ).  In determining what grounds are expressly
presented, we may not rely on the appellate briefs or summary judgment
evidence.  McConnell, 858 S.W.2d at 341. 

Arguments and Authorities

            DM
asserts in its first issue that the trial court erred in granting summary
judgment because it incorrectly relied on the Carmack
Amendment, which regulates interstate transportation of goods by motor carrier,
rather than the ADA, which governs the interstate transportation of goods by
air carrier.  DM argues that “[t]he Air
Bill makes this an ADA case,” and that with the ADA’s 1978 deregulation of air
transportation, interstate air carriers and shippers are now free to negotiate
their own contracts, which may be interpreted and enforced under state
law.  DM argues that, while the ADA
governs interstate air transportation, state law governs the interpretation and
enforcement of contracts between shippers and carriers without federal
preemption as long as state law does not enlarge or enhance the terms of the
contract, citing Am. Airlines, Inc. v. Wolens, 513 U.S. 219 (1995).

            Dunbar responds that: (1) DM failed
to urge its ADA argument to the trial court, and is therefore barred from
urging it on appeal; and (2) whether the Carmack or
the ADA applies, Dunbar still prevails because federal law—either Carmack or ADA—governs Dunbar as an indirect air carrier,
and preempts all state law causes of action between shippers and carriers,
citing Sam L. Majors Jewelers v. ABX,
Inc., 117 F.3d 922, 926–29 (5th Cir. 1997).

            DM did, in fact, fail to present to
the trial court in its partial summary judgment motion, answers or other
responses the argument it now asserts on appeal, i.e., that the ADA, and not the Carmack,
applies to the Service Contract. 
However, while DM, as the nonmovant, must have
expressly presented to the trial court any arguments for avoiding Dunbar’s right to
summary judgment, DM may, nevertheless, challenge on appeal the legal
sufficiency of movant Dunbar’s summary
judgment proof.  Tex. R. App. P. 33.1; see
McConnell, 858 S.W.2d at 341 (citing City
of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex.
1979)).  Accordingly, because DM contends
the trial court erroneously applied the law, i.e., relied on the Carmack instead of
the ADA as the governing law, we interpret DM’s first issue as an attack on the
legal sufficiency of Dunbar’s summary judgment proof on this ground.  See id.  We reject Dunbar’s argument
that DM’s first issue is not preserved for review.

            Although Dunbar asserted
in its motion for summary judgment that the Carmack
applied, and DM failed to urge to the trial court that the ADA applied,
both parties agreed at oral argument before this Court that the ADA governs
the case.  The agreement was proper; uncontradicted affidavit and deposition testimony
accompanying both Dunbar’s prevailing motion for summary
judgment and DM’s rejected motion for partial summary judgment showed that Dunbar treated
DM’s package as an air transportation package such that the ADA was the
applicable federal regulatory measure.

            Russell E. Daniels, Dunbar’s Vice
President - Administration and Risk Management, testified in deposition supporting
Dunbar’s response to DM’s amended motion
for partial summary judgment.  Daniels
testified that “[DM’s] stones got on board the plane and got off the plane,”
and that “it got off the plane in New York.”

            Dunbar’s driver-guard, Keith Brown,
testified by affidavit offered by Dunbar that, after picking up DM’s package at
its Houston office, he “drove the bag containing DM’s package along with other
packages to the Ellington Airfield Airport in Houston, Texas, at approximately
8:30 p.m. that same night,” where he “gave the packages to the aircraft’s
ground crew to be loaded,” and “obtained the signature of the air courier’s
representatives.”

            When both parties move for summary
judgment, as here, and the trial court grants one motion and denies the other,
the reviewing court must consider the summary judgment evidence presented by
both.  Comm’rs Court v. Agan, 940
S.W.2d 77, 81 (Tex. 1997).  Based on this
summary judgment evidence provided by Dunbar, we hold
that DM has shown that its package was, in fact, shipped by air, such that the ADA, and not
the Carmack Amendment, governs.

            Dunbar’s second
argument opposing DM’s first issue urges that, although the ADA and not
the Carmack is the applicable federal law, DM’s state
law causes of action are still barred by preemption; DM disagrees.

     The Carmack
Amendment, the ADA, and Preemption of DM’s State Law Claims

                                                      The
Carmack Amendment

            The effect of the 1906 Carmack Amendment to the Interstate Commerce Act of 1887
was for federal law to preempt state laws as to rights and liabilities arising
from goods lost or damaged in interstate transport.  See
Brown v. Am. Transfer and Storage Co., 601 S.W.2d 931, 939 (Tex. 1980); see also Acura Sys. Inc.
v. Watkins Motor Lines, Inc., 98 F.3d 874, 876
(5th Cir. 1996); Moffit v. Bekins
Van Lines Co., 6 F.3d 305, 306 (5th Cir. 1993).  Before passage of the Carmack
Amendment,

            [t]he Federal courts
sitting in the various states were following the local rule, a carrier being
held liable in one court when, under the same state of facts, he would be
exempt from liability in another.  Hence
this branch of interstate commerce was being subject to such a diversity of
legislative and judicial holding[s] that it was practically impossible for a
shipper engaged in a business that extended beyond the confines of his own
state, or a carrier whose lines were extensive, to know, without considerable
investigation and trouble, and even then often times with but little certainty,
what would be the carrier’s actual responsibility as to goods delivered to it
for transportation from one state to another. 
The [Carmack] has made an end to this
diversity; for the national law is paramount and supersedes all state laws as
to the rights and liabilities and exemptions created by such transaction.

 

Moffit, 6 F.3d at
306 (quoting Adams Express Co. v. Croninger, 226 U.S. 491, 505
(1913)).

            State law claims that are preempted
by the Carmack include the tort of outrage,
intentional and negligent infliction of emotional distress, breach of contract,
breach of implied warranty, breach of express warranty, violation of the Texas
DTPA, slander, misrepresentation, fraud, negligence and gross negligence.  Moffit, 6 F.3d at 305–07.

            However, the Texas Supreme Court has
held that the Carmack does not preempt a DTPA claim based
on a misrepresentation made prior to the contract.  Brown,
601 S.W.2d at 939.[7]

                                       The Airline Deregulatory Act (“the ADA”)

            “In 1978, Congress enacted [the ADA], 92 stat.
1705, which largely deregulated domestic air transport.”  Wolens, 513 U.S. at 222–23.  By doing so, Congress sought to create the
maximum reliance on competitive market forces to create efficiency, innovation
and low prices as well as variety and quality of air transportation service.  Continental Airlines, Inc. v. Kiefer, 920 S.W.2d 274, 278 (Tex. 1996).  To prevent the
States from undoing federal deregulation with regulation of their own, Morales v. Trans World Airlines, Inc.,
504 U.S. 374, 378 (1992), the ADA contained a preemption clause which read, in
pertinent part:

            “[N]o State . . . shall enact or
enforce any law, rule, regulation, standard or other provision having the force
and 

 class=Section2>

effect
of law relating to rates, routes, or services of any air carrier . . . .  49 U.S.C. App. § 1305 (a)(1).”


Wolens, 513 U.S. at 222–23.  

 

            Dunbar argues
that this preemption clause bars state law enforcement of causes of actions,
such as DM would have the state court enforce here, that relate to Dunbar’s
services.  We disagree.  

            Wolens  held that the ADA’s
preemption “bars state-imposed regulation of air carriers, but allows room for
court enforcement of contract terms set by the parties themselves.”  Id. at 222.  In determining
whether a breach of contract action survives ADA
preemption, a court is restricted to enforcing the actual terms of the contracting
parties’ bargain “with no enlargement or enhancement based on state laws or
policies external to the agreement.”  Id. at 232–33.

            Thus, action in the courts to
enforce state law policy statutes and remedies, such as consumer
protection/DTPA measures (“what the state dictates”) is barred by
preemption.  Id. at 233.  On the other
hand, “what the airline itself undertakes” is different.  “[T]he ADA permits
state-law-based court adjudication of routine breach-of-contract claims. . . .”
 Id.  A breach of contract action between a shipper
and an air carrier therefore survives if the court’s concern is restricted to
the parties’ bargain.  Id.
232–33.  Consistently, the Texas Supreme
Court held in Kiefer, 920 S.W.2d 274,
that the ADA does not preempt breach of contract or personal injury negligence
claims, but does preempt DTPA claims, id.
at 278, reasoning that common law negligence and
breach of contract claims do not impair federal regulation.  Id. at 282–83.

            In its motion for rehearing, Dunbar cites the
recent decision in Delta Air Lines, Inc.
v. Black, 46 Tex. Sup. Ct.
J. 872, as determining that Diamond’s breach of contract claim pertains to the
“services” of an air carrier and that the ADA therefore
preempts the claim.  

 class=Section3>

            Black
involved a passenger’s breach of contract claim based upon an airline’s
alleged refusal to honor a confirmed seat reservation.  Following a two-part analysis, Black held that the passenger’s breach
of contract claim constituted, within the ban of the ADA’s preemption clause, a
claim that both (1) involved airline “services,” and (2) constituted
enforcement of a state law that regulated air carriers.

            The Texas Supreme Court noted in Black that “[t]he ADA does not
specify, and the United States Supreme Court has not determined, what
activities constitute airline services.” 
Id. at 876. 
Black observed that the
passenger’s claim related to the airline’s seating and boarding policies, and
that “most courts generally agree that state law claims involving seating and
boarding procedures relate to [airline] services [within the ADA’s preemption
clause]” (citing numerous U.S. circuit and district court opinions).  Id. at 877.

            As to the breach of contract suit
being an enforcement of state law regulating air services, Black noted that the U.S. Department of Transportation (“DOT”),
acting under regulatory authority conferred by Congress in the ADA, had
“promulgated comprehensive regulations interpreting the ADA.”  Id. at 878.  Specifically, Black noted that under 14 C.F.R. §§ 250.1-.9, DOT is permitted (1)
to regulate “oversales” in air carrier service, (2)
to determine compensation due to passengers “involuntarily denied boarding
caused by an oversold flight, id. §
250.5,” and (3) to establish regulations determining when a passenger is involuntarily
denied boarding, citing 14 C.F.R. § 250.9. 
Black further held that the
parties’ contract incorporated DOT regulations about denied boarding
compensation; that Black sought to enlarge Delta’s obligation to him by
ignoring DOT regulations and asserting contractual claims in court; that Black
was not “involuntarily denied boarding” under DOT rules and exceptions; and
that Black therefore could not “forego the remedies provided by the DOT
regulations and seek damages in court.”  Id. at 878.

            The case before us is readily
distinguishable.  The Service Contract
called for Dunbar to pick up DM’s package, to
deliver it to the air carrier, and to receive and deliver the package to DM’s
consignee when the air carrier arrived at its destination.  No cited case shows that the conduct of the
parties was an airline “service” preempted under the ADA.  Nothing in the summary judgment evidence
indicates either a conflict between DM’s breach of contract contentions and an
existing federal regulation, or a state-imposed attempt at regulation of an air
carrier, or anything more than “court enforcement of contract terms set by the
parties themselves.”  Wolens, 513 U.S. at 222.

            We reject Dunbar’s argument that
DM’s breach of contract claim is barred by ADA preemption.  We sustain DM’s first issue.

            Issues two through six assert
matters related to the Service Contract’s 30-Day Rule and urge contract
principles that DM argues excuse timely notice of its loss claim.  DM contends the trial court erred in granting
summary judgment because: 

(1)       Dunbar is estopped from relying on the 30-Day Rule (Issue two); 

(2)       Dunbar waived the 30-Day
Rule (Issue three); 

(3)       the
30-Day Rule is ambiguous and oppressive (Issue four); 

(4)       DM’s failure to give
notice was excused due to impossibility or impracticability of performance
(Issue five); and

            (5)       the 30-Day Rule
was not conspicuous within the Service Contract (Issue six).

 

            As it urged in Issue one, Dunbar also urges
as to Issues four, five, six and nine that DM failed to expressly present to
the trial court by summary judgment motion, answer, or other response, the
arguments it now asserts on appeal.  DM
disputes each of Dunbar’s complaints.  We have examined the pleadings filed and have
determined Dunbar is in error as to Issues four and five, but correct as to
Issue six.  DM did mention in its
response to Dunbar’s motion for summary judgment its arguments that the 30-Day
Rule is oppressive (Issue four), and that it would be impossible to comply with
the 30-Day Rule’s notice requirement when the loss was discovered more than 30
days after the package was delivered to Dunbar (Issue five).  We therefore reject these complaints by Dunbar.

            However, as to Issue six, our search
of the record reveals—and DM fails to direct us to any record reference to the
contrary in its Reply Brief—that DM failed to expressly present to the trial
court by written motion, answer, or response its argument that the 30- Day Rule
was not conspicuous.  Accordingly, we cannot
consider this argument on appeal as a ground for reversal.  See
McConnell, 858 S.W. 2d at 339–41. 
Issue six is overruled.

            In sustaining Issue one, we held
that: (1) the ADA governs
interstate air carrier shipments; and (2) shipper DM’s breach of contract
claims against air carrier Dunbar are not barred by ADA
preemption.  Accordingly, we remand
Issues two, three, four and five for the trial court’s determination.

            DM explains in its appellate brief
that Issues seven and eight focus on “no preemption of DTPA.”  DM asserts in its Issue seven that the trial
court erred in granting summary judgment because neither the Carmack nor the ADA preempt
DM’s state law claims because Dunbar waived
preemption by inserting Section 13 into the Service Contract, thereby reviving
state law claims.

            Section 13 of the terms and
conditions of the Service Contract provides that: 

“[Dunbar] accepts
the duties and responsibilities of this Agreement only with the acceptance of
and compliance with the conditions stated above . . . .  Any claims made by [DM] must be subject to
these conditions, whether filed under contract, tort, warranty, strict
liability barement, conversion, or any other theory
of liability.”

            We held in Issue one that the Carmack was not the applicable governing law.  Our concern is, therefore, with the ADA’s
preemptive effect.  However, DM failed to
expressly present to the trial court by written motion, answer, or other
response that the ADA does not
preempt DM’s state law claims.  See McConnell, 858 S.W. 2d at
339–41.  DM therefore waived these arguments,
and we may not consider them on appeal as grounds for reversal.  Issue seven is overruled.

            DM asserts in its Issue eight that
the trial court erred in granting summary judgment because neither the Carmack nor the ADA preempts
DM’s claims for pre-contract DTPA claims. 
We determined in Issue one that the ADA , and not
the Carmack, is the applicable governing law, and
that it  preempts and bars consumer
protection/DTPA state law remedies, considering them to be state actions or
policies that enlarge or enhance the actual terms of the contracting parties’
bargain.  Wolens, 513 U.S. at 222–23;
Kiefer, 920 S.W.2d
at 282–83.  Because the ADA preempts
pre-contract DTPA claims, we overrule Issue eight. 

            DM asserts in Issue nine that the
trial court erred in granting summary judgment because there is evidence to
support DM’s breach of contract, bailment, and DTPA causes of action.  As we stated in Issues one and eight, the ADA preempts
DM’s DTPA claims.  Wolens, 513 U.S. at 232–33; Kiefer 920 S.W.2d
at 282–83.  Accordingly, Issue
nine is overruled as to DM’s DTPA claims. 
As with Issues two through five, DM’s Issue nine breach of contract and
bailment claims are remanded to the trial court for its consideration, applying
the ADA as the
applicable law.

            Dunbar’s summary
judgment is reversed and the cause is remanded to the trial court for
proceedings consistent with this opinion.

 

                                                                        /s/        Lee Duggan, Jr.

                                                                                    Senior
Justice

 

Judgment rendered and Opinion filed
September 23, 2003.

Panel consists of Justices Hudson,
Fowler and Senior Justice Duggan.[8]

 

 

 











            [1]  49 U.S.C.A. §§ 13101–14914
(West 1997 & Supp. 2002).





            [2]  49 U.S.C.A. §§ 40101–40120
(West 1997 & Supp. 2002).





            [3]  Tex.
Bus. & Com. Code Ann. §
17.46 (Vernon 2002).





            [4]  Although DM paid Dunbar a fee
based on DM’s claim of $30,000 in value, DM later claimed that cash and other
precious stones were included in the package, for a total value of $172,000.





            [5]  49 U.S.C.A. § 14706(e)(1)
(West 1997).  





            [6]  We recognize that plurality opinions are not
binding on us, however, we have cited the plurality opinions that we find
persuasive.  See Cincinnati Life Ins. Co. v. Cates,
927 S.W.2d 623, 626 (Tex. 1996); Conner v. ContiCarriers and Terminals, Inc., 944 S.W.2d 405, 413
(Tex. App.—Houston [14th Dist.] 1997, no writ).





            [7]  We are aware that many federal courts have
held to the contrary.  See Moffit, 6
F.3d at 305–07 (holding a claim of a violation of the Texas DTPA is preempted
by the Carmack Amendment); Gordon v. United Van Lines, Inc., 130 F.3d 282, 298 (7th Cir. 1997)
(Carmack Amendment preempts a claim under the
Illinois Consumer Fraud and Deceptive Business Practices Act); Rini v. United Van Lines, Inc. 104 F.3d 502,
506 (1st Cir. 1997) (Carmack Amendment preempts a
claim for unfair and deceptive acts under Massachusetts state law).  However, these federal cases are not
authoritative because we are not controlled by decisions of the lower federal
courts, including the Fifth Circuit.  See Penrod
Drilling Corp. v. Williams, 868 S.W.2d 294, 296 (Tex.
1993).  On questions of federal common
law, we are bound to follow only the decisions of the United States Supreme
Court and Texas Supreme Court.  Id.  While we
recognize that federal courts have superior expertise in federal law, their
decisions are persuasive authority only. 
Id.





            [8]  Senior Justice Lee Duggan,
Jr., sitting by assignment.