# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-02-00718-CV

Cargill, Incorporated, Appellant

v.

Merit Distribution Services, Inc., Appellee

FROM THE COUNTY COURT AT LAW NO. 3 OF BELL COUNTY
NO. 45,601, HONORABLE GERALD M. BROWN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Cargill, Incorporated[1] hired appellee Merit Distribution Services, Inc. to haul raw unfrozen turkey product from Waco to a Boar's Head Provisions Co. facility in Forest City, Arkansas. Merit delivered an empty trailer to Cargill's plant, and Cargill loaded the trailer and sealed it. The turkey product was wrapped in plastic and packed in twenty bins that were loaded into the front forty-eight feet of Merit's fifty-three foot long trailer. Merit picked up the sealed trailer and hauled it to Arkansas, where Boar's Head accepted thirteen of the bins, slightly more than half, and rejected the rest. The seven rejected bins were returned to Waco and upon inspection, Cargill found

---

[1] The underlying transaction was between Merit Distribution Services, Inc. and Plantation Foods, Inc. Plantation Foods has since been merged into Cargill, and Merit filed its suit against Cargill. For clarity, we will refer only to Cargill in this opinion, regardless of whether the action was taken by Cargill or Plantation Foods.

that the product had been compressed and contaminated with aluminum slivers. Boar's Head withheld $26,419.08 from Cargill, Cargill withheld that amount from Merit, and Merit brought this suit on a sworn account. Cargill asserted that the Merit driver's sudden braking caused a load shift that damaged the turkey product and asked for a $26,419.08 offset against Merit's cause of action. The trial court granted summary judgment in favor of Merit, and Cargill appeals. We affirm the judgment.

Rule 166a governs both "traditional" and "no-evidence" motions for summary judgment. Tex. R. Civ. P. 166a. In reviewing the grant of summary judgment, we view the evidence in the light most favorable to the non-moving party and make every reasonable inference and resolve all doubts in that party's favor. *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.—Austin 2000, no pet.). To be entitled to a traditional summary judgment, the moving party must establish that it is entitled to judgment as a matter of law and that there are no genuine issues of material fact. Tex. R. Civ. P. 166a(c); *Holmstrom*, 26 S.W.3d at 530. A party may also, after "adequate time for discovery," move for summary judgment asserting there is no evidence to support one or more essential elements on which the non-moving party has the burden of proof, and the trial court must grant the motion unless the non-moving party produces more than a scintilla of evidence raising a genuine issue of fact as to those elements. Tex. R. Civ. P. 166a(i); *Holmstrom*, 26 S.W.3d at 530.

Merit sought both a traditional and a no-evidence summary judgment. *See* Tex. R. Civ. P. 166a(c), (i). Merit asserted that because Cargill packed and loaded the turkey product in a sealed trailer, it was responsible for any damage suffered during shipment. Merit further asserted that no evidence supported Cargill's allegation that Merit was responsible for the damage. Merit

2

relied on the Bill of Lading Act, 49 U.S.C.A. §§ 80101-80116 (West 1997), and the Carmack Amendment, 49 U.S.C.A. § 14706 (West 1997 & Supp. 2002), in support of its argument.

Under the Carmack Amendment, carriers such as Merit are liable for goods damaged during transport unless the damage was the result of an act of God, the public enemy or public authority, the shipper itself, or the inherent vice or nature of the goods. *Missouri Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 137 (1964). A shipper, in this case Cargill, establishes a *prima facie* right to recover from a carrier if it shows delivery to the carrier in good condition, arrival in damaged condition, and the amount of damages. *Id*. The carrier then bears the burden of showing that it was free from negligence and that the damage was the result of one of the Carmack exceptions. *Id*. A carrier is not liable for damage caused by the shipper's improper loading. *Solway Metal Sales, Ltd. v. Baltimore & Ohio R.R. Co.*, 344 F.2d 568, 569 (D.C. Cir. 1965).

The general rule is that the party that loads the goods is liable for any damage caused by improper loading unless the defect is evident upon reasonable inspection. *American Foreign Ins. Ass'n v. Seatrain Lines of Puerto Rico, Inc.*, 689 F.2d 295, 299 (1st Cir. 1982). When a shipper loads the merchandise, the carrier's duty to discover any improper loading generally is limited to discovery of apparent defects. *Fluor Eng'rs & Constructors, Inc. v. Southern Pac. Transp. Co.*, 753 F.2d 444, 453 (5th Cir. 1985); *see also Accura Sys., Inc. v. Watkins Motor Lines, Inc.*, 98 F.3d 874, 878 (5th Cir. 1996) (quoting *Spartus Corp. v. S/S Yafo*, 590 F.2d 1310, 1319 (5th Cir. 1979)) (bill of lading is *prima facie* evidence of delivery in good condition, but notation of "apparent good order" is evidence only as to portions of goods that are visible and open to inspection). If a bill of lading includes the language "shipper's load, weight, count and seal," the shipper bears the burden of showing that it loaded the goods properly. *Fluor Eng'rs*, 753 F.2d at 453 n.13. If the shipper cannot

3

make such a showing, it may only recover from the carrier if it can show that the carrier's independent act of negligence contributed to the damage. *Id*.

The Court of Appeals for the Fifth Circuit has held that a shipper's evidentiary burden when goods are shipped under seal or are otherwise not open to inspection is one of "adequate proof" or by a preponderance of the evidence. *Accura Sys.*, 98 F.3d at 878. Delivery in good condition can be shown by circumstantial evidence. *Id*. at 878-79. General evidence of plant conditions and quality control may support a finding of delivery in good condition, as may evidence of packaging materials in good condition at delivery and damaged condition at arrival, along with a history of problem-free packing. *Id*. at 879-80. Other courts, however, have required direct and affirmative proof. *Id*. at 878 (quoting *D.P. Apparel Corp. v. Roadway Exp., Inc.*, 736 F.2d 1, 4 (1st Cir. 1984)); *see Ed Miniat, Inc. v. Baltimore & Ohio R.R. Co.*, 587 F.2d 1277, 1283 (D.C. Cir. 1978).

In summary, Merit's argument was that although Cargill alleged that the damage was caused when the load shifted during transit, Merit was not liable for any load shifting. Merit contended that because Cargill delivered the goods in a pre-packed and sealed container, it could not produce evidence that the goods were delivered to Merit in good condition. Merit further contended that a witness "with first-hand knowledge of the packing is necessary," and that Cargill could not produce any such witness. Finally, Merit asserted that Cargill could not show that the turkey product was packed in a manner fit for the contemplated shipment. *See Eastern Motor Express, Inc. v. A. Maschmeijer, Jr., Inc.*, 247 F.2d 826, 828 (2d Cir. 1957).

Cargill filed two responses to Merit's motions for summary judgment. The first, titled "Defendant's Response to Plaintiff's Motion for Summary Judgment," reads in its entirety:

4

Now comes Cargill Incorporated, Defendant, and files the following affidavits in support of its response opposing the Motion for Summary Judgment of Plaintiff:

1. Affidavit of Peter Brown;

2. Affidavit of William Eugene Foitek;

3. Exhibit B to the affidavit of William Eugene Foitek.

Wherefore Defendant prays the Court that the Plaintiff's Motion for Summary Judgment be denied.

Cargill's second response, titled "Cargill, Incorporated's Affidavits In Support of Its Motion to Transfer Venue and In Opposition to Plaintiff Merit Distribution Services, Inc.'s Motion for Summary Judgment," reads in its entirety:

Now comes Cargill, Incorporated and moves that the following affidavit's [sic] in support of its Motion to Transfer Venue and in opposition to Plaintiff Merit Distribution Services, Inc.'s Motion for Summary Judgment be filed of record:

1. Affidavit of William Eugene Foitek, subscribed on October 8, 2002.

2. Affidavit No. 1 of Peter Brown, subscribed on October 8, 2002.

3. Affidavit No. 2 of Peter Brown, subscribed on October 8, 2002.

4. Affidavit No. 3 of Peter Brown, subscribed on October 8, 2002.

5. Affidavit of Pat Beard certifying to excerpts from the deposition of Robert Lofton, subscribed on October 8, 2002.

Cargill presented no argument or explanation that makes reference to any evidence.

A motion for summary judgment must stand or fall on the grounds expressly presented in the motion, and a trial court considering such a motion is restricted to issues presented

in the motion, response, and replies. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341-42 (Tex. 1993); *Alder v. Laurel*, 82 S.W.3d 372, 375-76 (Tex. App—Austin 2002, no pet.); *see City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979) ("[p]leadings do not constitute summary judgment proof" and "non-movant must now, in a *written answer or response* to the motion, expressly present to the trial court those issues that would defeat the movant's right to a summary judgment and failing to do so, may not later assign them as error on appeal") (emphasis added). We disagree with Cargill's contention that *McConnell* and its progeny have no application to no-evidence motions for summary judgment.[2] *See Alder*, 82 S.W.3d at 375-76; Tex. R. Civ. P. 166a(i) cmt. ("To defeat a motion made under paragraph (i), the respondent is not required to marshal its proof; its *response* need only point out evidence that raises a fact issue on the challenged elements. *The existing rules continue to govern the general requirements of summary judgment practice*.") (emphasis added). Cargill was not required to set out in its response the evidence it argued raised fact issues, nor was it required to note exactly where in the evidence

---

[2] We also disagree with Cargill's contention that *McConnell* should not be considered authority for the proposition that a party must raise its summary judgment issues and defenses in a motion, response, or reply, and that courts should not rely on issues raised only in briefs filed in support of such motions or replies. See *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341-42 (Tex. 1993). Although we acknowledge that *McConnell* was a plurality decision, subsequent cases from the supreme court and courts of appeals across the State have followed that decision and applied the same rule. *See Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex. 1997); *Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993); *Alder v. Laurel*, 82 S.W.3d 372, 375-76 (Tex. App.—Austin 2002, no pet.); *Fletcher v. Edwards*, 26 S.W.3d 66, 74 (Tex. App.—Waco 2000, pet. denied); *Lewis v. Adams*, 979 S.W.2d 831, 835 (Tex. App.—Houston [14th Dist.] 1998, no pet.); *Feldman v. Kohler Co.*, 918 S.W.2d 615, 626-27 (Tex. App.—El Paso 1996, writ denied); *Newman v. Tropical Visions, Inc.*, 891 S.W.2d 713, 717 (Tex. App.—San Antonio 1994, writ denied); *Bean v. Bluebonnet Sav. Bank FSB*, 884 S.W.2d 520, 522 (Tex. App.—Dallas 1994, no writ); *Oden v. Marrs*, 880 S.W.2d 451, 454 (Tex. App.—Texarkana 1994, no writ); *Robbins v. HNG Oil Co.*, 878 S.W.2d 351, 363 (Tex. App.—Beaumont 1994, writ dism'd w.o.j.); *Marchal v. Webb*, 859 S.W.2d 408, 418 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

such fact issues could be found.  *See Wilson v. Burford*, 904 S.W.2d 628, 629 (Tex. 1995); *Simplified Telesys, Inc. v. Live Oak Telecom, L.L.C.*, 68 S.W.3d 688, 691 (Tex. App.—Austin 2000, pet. denied).  However, Cargill was required to respond in such a way as to satisfy the general rules applying to summary judgment practice.  *See* Tex. R. Civ. P. 166a(i) cmt.; *Clear Creek Basin Auth.*, 589 S.W.2d at 678-79.  Having failed to present such a response to Merit's motion for summary judgment, Cargill is limited on appeal to attacking the sufficiency of Merit's no-evidence motion.  *See Cuyler v. Minns*, 60 S.W.3d 209, 213 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); *Callaghan Ranch, Ltd. v. Killam*, 53 S.W.3d 1, 3 (Tex. App.—San Antonio 2000, pet. denied).

Even if we consider Cargill's responses as sufficient, the trial court did not err in granting Merit's motion for summary judgment.  In its petition, Merit alleged that it had performed shipping services for Cargill and, thus, was owed payment for those services.  Cargill's defense to Merit's claim was that the turkey product was properly loaded but damaged and contaminated by Merit's handling and, therefore, Cargill was entitled to an offset of the value of the damaged product.  Merit's motion for summary judgment alleged that there was no evidence that the turkey product was properly loaded or delivered in good condition or that Merit was responsible for the damage.

The parties are in agreement that Cargill loaded the turkey product into the trailer, sealed it, and had Merit pick up and transport the sealed trailer.  During the trip, the driver was forced to brake sharply when a truck pulled out in front of him.  In his deposition, he stated that he was already slowing down from fifty-five miles an hour as he approached the intersection and probably braked until the truck was going about twenty-five miles an hour.  He said the truck did not skid and the brakes did not lock but that it would be hard to make the truck skid because it weighed

7

about 80,000 pounds. He believed that the load shifted when he braked. When he reached Arkansas and the trailer was unsealed at the Boar's Head facility, he saw that some of the load was pushed forward and that the eight circular bins closest to the cab of the truck had compressed into ovals. He said they were not fully compressed, but compressed enough to change their shape. Boar's Head refused the seven bins closest to the cab, saying it was too much work and too time consuming to take them; the driver did not understand the reasons for Boar's Head's refusal. The driver testified that one bin was lying on its side but the other six bins were still upright. After a careful inspection, the driver did not see any meat touching the floor of the trailer and saw that the plastic containing the meat was still intact. The driver did not know how metal could have gotten into the turkey product because six of the seven bins were still standing and were still wrapped in plastic; the turkey had come out of the tipped bin but was "still on that plastic. No meat ever touched the ground."

As evidence, Cargill attached an affidavit by William Foitek, who stated that he was shipping distribution supervisor for Cargill and that he had supervised the loading of "approximately 8000 loads of raw unfrozen turkey product with the same loading procedure used" in this case. The turkey is packed into twenty bins, each "a cardboard rectangular box 48" by 40" with rounded corners and 48" high loaded on a wooden pallet." The bins are filled almost full, packed with ice, covered with plastic tops, and then wrapped in two layers of plastic. He stated that it was his understanding that the trailer was loaded with 20 bins and described how the bins are supposed to be packed. He stated that the "pallets and bins are loaded in a very precise manner," attaching a sketch of how the bins are to be packed into a trailer, and said that he "train[s] the workmen who actually load the trailers." He stated that he believed that Cargill's loading method is standard for

8

the industry and said that other than this incident, he had never known of any load shift for "products loaded as described herein"; Merit had never complained about Cargill's loading in the past.

The "Loading/Delivery Report" for this shipment contains the notations of "Shipper Load & Count" and "Pre Loaded." The dispute is clearly whether the damage to the load was caused by improper loading or by the driver's braking to avoid an accident. Merit was not under an obligation to break the seal and inspect the load before beginning the haul. *See Spartus Corp.*, 590 F.2d at 1319; *Ed Miniat*, 587 F.2d at 1283. Cargill's evidence established only that shipments such as the one in question were traditionally loaded in a particular manner and that there had never before been any problem with such a loading practice. Although that may be considered in determining whether the goods were delivered to Merit in good condition, *see Accura Systems*, 98 F.3d at 878-80, it does not establish that the goods were not contaminated with metal shavings before being packed and loaded. Cargill did not produce any evidence establishing the condition of the turkey product before being loaded or of the plant's condition and quality control procedures. Nor was there any evidence that the packaging was in good condition when delivered to Merit or that it was packed and loaded properly for the contemplated shipment. Cargill did not produce evidence raising a fact issue as to delivery or loading in good condition. Therefore, the trial court did not err in granting Merit's no-evidence motion for summary judgment.[3] Further, the driver's deposition testimony stated that

[3] Cargill also argues in its reply brief that Merit, by failing to state in its no-evidence motion that there had been "adequate time for discovery," had not made all necessary assertions to warrant a no-evidence summary judgment. Although a no-evidence motion may not be granted unless there has been adequate time for discovery, rule 166a(i) does not require the moving party to recite that allegation in its motion, nor does the supreme court's comment imply such a requirement. *See* Tex. R. Civ. P. 166a(i) cmt. Merit filed its original petition in July 2001, its amended petition in July 2002, its motion for summary judgment in May 2002, and its amended motion in October 2002. The record does not reflect that Cargill complained of insufficient time for discovery before the trial

the plastic wrapping covering the turkey product was intact, only one pallet or container was tipped over and touching the floor of the trailer, and that the turkey was still inside its plastic bag. The other containers were merely compressed into oval shapes. Cargill did not produce any evidence to rebut the driver's testimony that it did not appear that the metal shavings could have been mixed into the turkey product as a result of the load shift. Further, although in one of Cargill's affidavits it is stated that the metal shavings were mixed into the turkey product "as if product had been spilled on the floor and then been put back in the bins," there is no evidence that the driver scooped up any spilled product. In fact, the driver stated that he broke the seal when he pulled into the Arkansas facility to allow the Boar's Head personnel to unload the bins and did not see the condition of the compressed bins until Boar's Head told him they would not accept all the bins. We hold that Cargill's evidence did not raise a fact issue sufficient to defeat Merit's traditional motion for summary judgment. We overrule Cargill's first and second issues on appeal.

In its third issue, Cargill complains that the trial court erred in awarding Merit attorney's fees because such fees are barred by federal statute.

Merit requested attorney's fees in its petition and its motion for summary judgment, attaching an affidavit from its attorney to support its request. Cargill requested attorney's fees in its answer. Cargill did not produce any evidence to rebut Merit's showing of attorney's fees, nor did it put forth any argument related to such an award. None of Cargill's affidavits attached to its purported responses to Merit's motion for summary judgment mentions attorney's fees at all. In its appellee's brief, Merit states that Cargill did not raise its complaint related to attorney's fees until

court. We overrule Cargill's complaint as to the sufficiency of the time for discovery.

10

the morning of the summary judgment hearing, when Cargill's attorney handed Merit's attorney a copy of the *Accura Systems* case.[4] Cargill has not produced a reporter's record from the summary judgment hearing; therefore we do not know whether or the extent to which this issue was presented to the trial court. We hold that Cargill has waived this issue. We overrule Cargill's third issue on appeal.

Having overruled Cargill's issues on appeal, we affirm the judgment of the trial court.

_____

Jan P. Patterson, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed: May 30, 2003

---

[4] The Interstate Commerce Act does not provide for recovery of attorney's fees in a suit to recover unpaid shipping charges. *Missouri Pac. R.R. Co. v. Center Plains Indus., Inc.*, 720 F.2d 818, 819 (5th Cir. 1983). Merit brought suit on a sworn account, a cause of action for which the recovery of attorney's fees is explicitly provided in section 38.001 of the civil practice and remedies code. Tex. Civ. Prac. & Rem. Code Ann. § 38.001(7) (West 1997). Section 13103 provides that "[e]xcept as otherwise provided in this part [related to motor carriers], the remedies provided under this part are in addition to remedies existing under another law or common law." 49 U.S.C.A. § 13103 (West 1997). Section 13103 notwithstanding, Texas courts have generally held that the Carmack Amendment preempts Texas's attorney's fees statute. *See, e.g.*, *Accura Sys., Inc. v. Watkins Motor Lines, Inc.*, 98 F.3d 874, 876-77 (5th Cir. 1996); *Strickland Transp. Co. v. American Distrib. Co.*, 198 F.2d 546, 547 (5th Cir. 1952); *Earl's Offset Sales & Svc. Co. v. Bekins/EDC, Inc.*, 903 F. Supp. 1148, 1150-51 (S.D. Tex. 1995). *But see Tallyho Plastics, Inc. v. Big M Constr. Co.*, 8 S.W.3d 789, 796 (Tex. App.—Tyler 1999, no pet.) ("Until its revision in 1996, . . . attorney's fees were not recoverable under the [Carmack] Amendment.").

11