**TALLYHO PLASTICS, INC., Appellant,**

v.

**BIG M CONSTRUCTION COMPANY, Machinery Transportation, Inc. and Mark Robinson Bunt, Appellees.**

No. 12–98–00266–CV.

Court of Appeals of Texas, Tyler.

Dec. 29, 1999.

Curtis W. Fenley, Lufkin, for appellee Big M.

Clay Wilder, Henderson, Andy Tindel, Tyler, for appellees Machinery Transport & Blunt.

Panel consisted of RAMEY, Jr., C.J., HADDEN, J., and WORTHEN, J.

### OPINION ON MOTION FOR REHEARING

RAMEY, Chief Justice.

Appellees Machinery Transport, Inc. and Mark Robinson Bunt filed a motion for rehearing in this matter. They urged this Court to rehear its September 30, 1999, decision to render judgment in favor of Tallyho Plastics, Inc. against Machinery Transport and Bunt. We now grant their motion. This court's previous opinion of September 30, 1999, is withdrawn, and the following opinion issued.

This is an appeal from a judgment in a suit for damages to a plastics injection molding machine owned by Tallyho Plastics, Inc. Tallyho appeals the trial court's judgment which failed to award attorney's fees on its breach of contract claim against Big M Construction Company, Inc. Big M files cross-issues complaining that the suit was tried under an incorrect theory of recovery, that there was insufficient evidence that Machinery Transport, Inc. and Mark Bunt were not also liable for the breach of contract, and of charge error on the damage question. We render judgment in favor of Tallyho against Machinery Transport and Bunt. As to Tallyho's judgment against Big M, it is in all things affirmed.

#### BACKGROUND

Tallyho's plastics injection molding machine was in transport from Omaha, Nebraska to Jacksonville, Texas when the truck hauling the machine was involved in an accident. Tallyho filed suit for damages as a result of the accident under theories of violation of the Deceptive

Ken W. Good, Tyler, for appellant.

Trade Practices Act, breach of contract, negligence, violation of the Motor Carrier Act, negligent misrepresentation and violation of the Carmack Amendment. The claims were asserted jointly and severally against Big M, Machinery Transport, and Bunt. The court rendered judgment on the jury's verdict providing that Tallyho was entitled to damages from Big M only in the sum of $97,000.00 and pre-judgment interest.

According to the record, Tallyho is a manufacturer of molded plastic products. It utilizes certain large pieces of equipment in the manufacturing process. One such piece of equipment is an injection molding machine. In 1995, Tallyho was in the process of having a 500 ton Reed injection molding machine rebuilt at Battleston Industries in Omaha, Nebraska. Tallyho sought out Big M to set the machine when it arrived at its Jacksonville, Texas plant. During their negotiations, representatives of Tallyho and Big M also discussed the transportation of the machine from Nebraska to Texas. It is disputed whether Tallyho eventually agreed to have Big M transport the machine or hire a carrier to do so. Big M contacted a broker and an agreement was made that Machinery Transport would pick up the machine in Omaha and transport it to Jacksonville for $1,600.00. Tallyho agreed to pay Big M $1,800.00 for the pick up and delivery.

On April 6, 1995, Bunt, a driver and employee of Machinery Transport, was dispatched to pick up the machine at Battleston Industries. Bunt began the transport, but was involved in an accident in Oklahoma. The Tallyho machine received extensive damage when the truck and trailer turned on their sides and slid. The machine was not delivered to Tallyho, but was eventually delivered back to Battleston Industries by Machinery Transport.

### APPLICABILITY OF THE CARMACK AMENDMENT

■ We will first address Big M's cross-issues. Over Big M's objection, the case was tried under both Texas statutory and common law causes of action. Big M, Machinery Transport and Bunt all argued that the case should be tried under the Carmack Amendment only. The Carmack Amendment governs a motor carrier's liability to a shipper, consignor, holder of bill of lading, persons beneficially interested in the shipment although not in possession of the actual bill of lading, buyers or consignees, or assignees thereof for the loss of, or damage to, an interstate shipment of goods. *See Harrah v. 3M and RPS*, 809 F.Supp. 313, 318 (D.N.J.1992). A pertinent provision of the Amendment holds that a carrier or freight forwarder and any other common carrier that delivers the property and is providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission under subchapter I, II, or IV are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property. 49 U.S.C. § 14706.

■ The United States Court of Appeals for the Fifth Circuit has held that the purpose of the Carmack Amendment is to "substitute a paramount and national law as to the rights and liabilities of interstate carriers subject to the Amendment." *Moffit v. Bekins Van Lines*, 6 F.3d 305, 306 (5th Cir.1993), *citing Air Products and Chemicals v. Illinois Cent. Gulf R.R.*, 721 F.2d 483, 486 (5th Cir.1983), *cert. denied*, 469 U.S. 832, 105 S.Ct. 122, 83 L.Ed.2d 64 (1984). The Carmack Amendment subjects a motor carrier transporting cargo in interstate commerce to absolute liability for "actual loss or injury to property." *See Missouri Pacific R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 137, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964). By limiting a carrier's liability to the actual loss or injury to the transported property, Congress intended to provide certainty to both shippers and carriers, and to enable carriers to assess their risks and predict their liability for damages. *Hughes v. United Van Lines*, 829 F.2d 1407, 1415 (7th Cir.1987), *cert.*

*denied,* 485 U.S. 913, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988); *Counter v. United Van Lines, Inc.,* 935 F.Supp. 505, 507 (D.C.Vt.1996). If a transaction is governed by the Carmack Amendment, state and common law causes of action involving the same transaction are preempted by the Amendment. *See Accura Systems, Inc. v. Watkins Motor Lines, Inc.,* 98 F.3d 874, 876 (5th Cir.1996); *Moffit,* 6 F.3d at 307.

■ Big M argues on appeal that the parties in this case are governed by the Carmack Amendment since it applies to shippers, carriers, freight forwarders and lessees when transporting people or property across state lines. *See* 49 U.S.C. § 10101 *et. seq.* Owners of property who seek interstate transportation of that property are considered shippers which are governed by the Carmack Amendment. *See Hiram Walker and Sons, Inc. v. Kirk Line,* 877 F.2d 1508, 1511 (11th Cir.1989). In the present case, Tallyho owned the injection molding machine and sought transport of this machine from Nebraska to Texas. Thus, the posture of Tallyho as owner placed it within the protections of this act, and the capacity in which Big M acted in the transaction is non-determinative of the issue.

Tallyho, on the other hand, maintains that its claims against Big M were not governed by the Amendment because Big M conceded at trial that it was not authorized to transport goods between states. Big M also asserted that it never intended to transport the machine involved in this case. Further, Big M did not possess a certificate authorizing it to engage in transportation in interstate commerce. Additionally, we note that Big M did not "ship" the machine, it was not a consignor or a consignee, nor was it certified to act as a broker or a freight forwarder. Thus, Tallyho argues that Big M was not entitled to rely upon the Carmack Amendment in this case.

■ We agree with Tallyho that the capacity in which Big M acted within the transaction is determinative of the issue. We note, however, that the Interstate Commerce Act defines a "broker" as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2). In other words, a broker is a party who, for compensation, arranges, or offers to arrange, the transportation of property by an authorized motor carrier. Although a broker is required to be certified under the Interstate Commerce Act, a party's failure to have certification does not determine his status as a broker under the Carmack Amendment. *See Ford v. Tandy Transportation,* 86 Ohio App.3d 364, 377, 620 N.E.2d 996 (Lawrence County, 1993).

Under the facts of this case, we conclude that Big M was acting as a broker between Tallyho and Machinery Transport. Thus, Tallyho's state and common law causes of action against Big M are preempted by the Carmack Amendment. And it is undisputed that Machinery Transport was a common carrier, and was acting as such when it undertook to transport the injection machine from Nebraska to Texas. Therefore, Tallyho's state and common law causes of action against Machinery Transport are also preempted. Consequently, the trial court erred when it refused Big M's and Machinery Transport's requests that they be subject only to damages under the Carmack Amendment.

### Harm Analysis

■ Big M argues that the trial court's jury charge error resulted in reversible error under Rule 44 of the Rules of Appellate Procedure, which provides the following:

44.1 Reversible Error in Civil Cases.

(a) *Standard for Reversible Error.* No judgment may be reversed on appeal on the ground that the trial court made an

error of law unless the court of appeals concludes that the error complained of:

(1) probably caused the rendition of an improper judgment; ...

Tex.R.App. P. 44.1(a).

■ In order to determine whether an error in the jury charge is harmful, an appellate court must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety. *See Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n,* 710 S.W.2d 551, 555 (Tex.1986). The submission must be considered as a whole to determine whether the error was prejudicial. *See Turk v. Robles,* 810 S.W.2d 755, 759 (Tex.App.— Houston [1st Dist.] 1991, writ denied). Under the harmless error rule, Big M must persuasively demonstrate that it has suffered harm from submission of the defective issues. *See Nacol v. McNutt,* 797 S.W.2d 153, 156 (Tex.App.—Houston [14th Dist.] 1990, writ denied). Big M has not done so here.

Big M proposes that the submission of questions on DTPA violations, negligence, negligent entrustment, and negligent hiring permitted improper testimony and evidence which resulted in an improper verdict. However, while this is a possibility, we are not privy to the jury's thought processes during deliberations, and a possibility is not a sufficient showing of harm under Rule 44.1(a)(1). Furthermore, they assert Big M fails to direct us to the specific testimony and evidence that caused the improper verdict. And we note that in the instant case, if the suit had been tried solely under the theory of violation of the Carmack Amendment, the question at issue would have been one of contract, the only theory of recovery upon which Tallyho prevailed. Moreover, the evidence was undisputed in support of a judgment against Big M on Tallyho's breach of contract claim. We hold, therefore, that the trial court's error in submitting the state and common law causes of action is harmless. We overrule Big M's cross-issue two.

### STANDARD OF REVIEW

### LEGAL SUFFICIENCY OF THE EVIDENCE

■ In its first cross-issue, Big M complains that the evidence is legally insufficient to support the jury's finding that Machinery Transport and Mark Bunt did not breach an agreement to move the injection machine from Omaha, Nebraska to Jacksonville, Texas for Tallyho. In reviewing a finding of the jury and the evidence regarding the negative finding of a jury, the court looks to the evidence supporting the jury finding in the light most favorable to the finding. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex. 1989). If the evidence fails to support the jury's finding, the court next looks to determine if the contradictory evidence conclusively establishes the opposite of the jury's finding. *Luker v. Arnold,* 843 S.W.2d 108, 114 (Tex.App.—Fort Worth 1992, no writ). A court may not properly disregard a jury's negative finding and substitute its own affirmative finding unless the evidence conclusively establishes such an affirmative finding. *New Process Steel Corp. v. Steel Corp. of Texas,* 703 S.W.2d 209, 216 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

### STANDING TO APPEAL

■ Before we consider Big M's sufficiency claim, we must address the other parties' position that Big M does not have standing to complain of the jury's finding that Machinery Transport and Bunt did not breach a contract or, in other words, that the other defendants should not also be held liable for Tallyho's damages. Tallyho, Machinery Transport and Bunt maintain that Big M asserted a claim for contribution against Machinery Transport and Bunt, but that the contribution statute does not apply to breach of contract claims. Further, Big M did not assert a cross-claim against the other defendants. Therefore, Big M cannot argue insufficiency of the evidence on appeal, since only

Tallyho has standing to appeal the negative finding. None of the complaining parties offer any authority for their position.

We agree that this is an unusual situation. However, we have been unable to locate any authority that an appellant may only appeal findings against itself. We hold that Big M does have standing to complain about the legal insufficiency of the evidence supporting the jury's negative answer regarding Machinery Transport and Bunt.

### ANALYSIS OF THE EVIDENCE

 In a review of the record, it is undisputed that at the time of the incident made the basis of this suit, the injection molding machine was within the custody and control of Bunt, Machinery Transport's driver, who was driving a truck owned by Machinery Transport. Mack Poole, the President of Machinery Transport, acknowledged that the machine was under the control of Machinery Transport at the time of the accident. Poole stated that this was a pick up for a one load contract job. He acknowledged that his company was responsible for the injection molding machine's transportation to Jacksonville. Poole stated that he "took on this job to haul a piece of equipment for Tallyho." Poole admitted that Machinery Transport did not complete the transport of the injection molding machine from Omaha, Nebraska to Jacksonville, Texas. He also acknowledged that his company had an agreement to transport the machine from Omaha, Nebraska to Jacksonville, Texas and failed to complete that agreement because of the accident in question.

There is no evidence in the record contradicting Machinery Transport's ownership of the tractor and trailer involved in the accident or that the injection molding machine was in the possession, custody and control of Machinery Transport and its employee Bunt at the time of the accident. Further, there is no evidence to contradict that the failure to comply with the agreement to transport the injection molding machine from Nebraska to Texas to or for Tallyho was due to anyone or anything other than the events involving Machinery Transport and Bunt. The evidence proves conclusively that Machinery Transport and Bunt failed to comply with an agreement to transport the injection molding machine from Nebraska to Texas for Tallyho.[1] Under Tex.R.App. P. 44.3, this Court must render the judgment that the trial court should have rendered. Tex. R.App. P. 44.3. We therefore substitute an affirmative finding of "Yes" to Question Number 4(b) and (c) and sustain Big M's cross-point one.

### DAMAGE ISSUE NOT PREDICATED UPON BIG M'S BREACH OF CONTRACT

 In its cross-issue three, Big M complains that the trial court erred when it entered judgment awarding Tallyho the difference in market value of the injection molding machine before and after the accident without predicating the damage issue upon Big M's breach. Tallyho submitted the case to the jury and requested issues on multiple theories of liability, including DTPA, negligence and contract. If the jury found liability under any of those theories, it was directed to answer Question Number 9, which reads as follows:

> What is the difference in the market value in Cherokee County, Texas of the injection molding machine immediately

---

1. Tallyho argues that Machinery Transport and Tallyho did not enter into a contract, *ergo* there was no contract for Machinery Transport to breach. However, the issue as submitted to the jury simply asked if Machinery Transport failed to comply with *an agreement* to transport the machine. It is undisputed that Machinery Transport agreed to transport the machine but failed to do so. Furthermore, there is authority that the act of transporting, when done under an ICC Tariff Number, creates a contract between the carrier and the shipper. *Aero Trucking, Inc. v. Regal Tube Co.*, 594 F.2d 619, 621 (7th Cir.1979); *Harrah v. 3M and RPS*, 809 F.Supp. 313, 317 (D.N.J.1992).

before and immediately after the truck wreck occurred on April 6, 1995?

> 'Market Value' means the amount that would be paid in cash by a willing buyer who desires to buy, but is not required to buy, to a willing seller, who desires to sell, but is under no necessity of selling.

Answer in dollars and cents for damages, if any.

ANSWER: $97,000.00

We note that this measure of damages is recoverable under the Carmack Amendment. *Eastman Kodak Co. v. Trans Western Exp., Ltd.*, 765 F.Supp. 1484, 1485 (D.Colo.1991).

We agree that the above-quoted damage question is defective in that the jury is not required to find that the breach caused the damages inquired about in Question Number 9. However, it is axiomatic that to complain on appeal, an appellant must have brought the charge error to the court's attention. Tex.R. Civ. 278; Tex. R.App. P. 33.1(a). On a review of the record, we note that Big M did not object during the charge conference that the submission on damages was incorrect.

Big M argues that it did not waive error because it complained of the charge error in post-verdict motions. In support of its position, it cites *Wal–Mart Stores, Inc. v. McKenzie*, 997 S.W.2d 278 (Tex.1999), in which the Supreme Court held that the appellant did not waive his complaint by not objecting to the submission of jury issues on compensatory and punitive damages in a wrongful discharge case. That case is distinguishable, however, because whether a particular remedy is available under a statute is a question of law for the court. Therefore, the jury's findings were immaterial to the ultimate issue of whether compensatory and punitive damages were available under the statute as a matter of law. *See id.* In the instant case, the jury's finding on damages is not immaterial. It is essential to a judgment on the case that the amount of damages be determined by the jury. It is not a matter for the court; therefore, it was incumbent upon Big M to bring the error to the trial court's attention before it charged the jury. We hold that Big M waived error and overrule its cross-issue three.

### ATTORNEY'S FEES

In its sole issue, Tallyho complains of the jury's failure to award any attorney's fees in response to Question Number 11 of the court's charge, which states:

> What is a reasonable fee for the necessary services of Tallyho Plastics, Inc.'s attorney in this case, stated in dollars and cents?
>
> Answer with an amount for each of the following:
>
> a. For preparation and trial.
>
> Answer: _0_
>
> b. For an appeal to the Court of Appeals.
>
> Answer: _0_
>
> c. For making or responding to an application for writ of error to the Supreme Court.
>
> Answer: _0_
>
> d. If application for writ of error is granted by the Supreme Court of Texas.
>
> Answer: _0_

Tallyho argues that the evidence establishes that some award of attorney's fees is appropriate and, therefore, the jury's answer of zero is so against the great weight and preponderance of the evidence that it would be manifestly unjust to allow it to stand. We agree that there is sufficient evidence to support an award of attorney's fees. However, as we earlier held, the controlling statute in this case is the Carmack Amendment. Until its revision in 1996, after the incident made the basis of this suit, attorney's fees were not recoverable under the Amendment. *See* 49 U.S.C. § 14704; *Missouri Pacific R.R. Co. v. Center Plains Industries Inc.*, 720 F.2d 818, 819 (5th Cir.1983). Consequently, the

failure to award attorney's fees in this case does not constitute error. Tallyho's sole issue is overruled.

We render judgment that Tallyho do have and recover against Machinery Transport and Bunt the sum of $97,000 and pre-judgment interest jointly and severally with Big M Construction Company. As to Tallyho's judgment against Big M, it is in all things affirmed.[2]

**2.** Because no judgment was specifically rendered in favor of Machinery Transport and Bunt, we do not reverse any portion of the judgment.