**Opinion issued November 28, 2023**



In The

# Court of Appeals

For The

# First District of Texas

————————————

### NO. 01-23-00044-CV

————————————

## IN RE UV LOGISTICS, LLC, UV LOGISTICS, LLC D/B/A UNITED VISION LOGISTICS, UNITED VISION LOGISTICS F/K/A UV LOGISTICS, LLC, Relators

---

### Original Proceeding on Petition for Writ of Mandamus

---

## O P I N I O N

Relators, UV Logistics, LLC, UV Logistics, LLC d/b/a United Vision Logistics, and United Vision Logistics f/k/a UV Logistics, LLC [UV Logistics, collectively] have filed a petition for writ of mandamus challenging the trial court's December 16, 2022 order requiring audio and videotape recording of the independent neuropsychological examinations of four real parties in interest, and

the January 17, 2023 order denying UV Logistics' motion for reconsideration.[1] UV Logistics contends that the trial court abused its discretion in requiring the independent neuropsychological examinations of four real parties to be recorded.[2]

We deny the petition.

## Background

This mandamus arises from a personal injury lawsuit filed by real parties in interest, Joe Medina, as next friend of Lillian Medina, Jeremy Atha, and Keisha Atha, Individually and as next friend of Keilei Atha, and L.A,[3] relating to a collision between the Medina vehicle and an 18-wheeler carrying a load of pipe. Real parties alleged that the collision caused injuries to the driver and all four passengers in real parties' vehicle. The driver of the truck, Fidel Edel Castillo Fonseca, who was employed by Layser Trucking, was dispatched on behalf of UV Logistics, to pick up the pipe and deliver it to the jobsite.

---

[1] The underlying case is *Joe Medina, as Next Friend of L.M.; Jeremy Atha; and Keisha Atha, Individually and as next Friend of K.A. and L.A. v. Layser Batista Fonseca d/b/a Layser Trucking; Fidel Edel Castillo Fonseca; UV Logistics, LLC; UV Logistics, LLC d/b/a United Vision Logistics; United Vision Logistics f/k/a UV Logistics, LLC; and Apache Corporation*, cause number 2018-89001, pending in the 334th District Court of Harris County, Texas, the Honorable Dawn Rogers presiding.

[2] The trial court also ordered relator's expert to turn over raw evaluation data. Relator does not challenge this part of the order.

[3] The four real parties who are the subject of the order for independent neuropsychological examinations are Jeremy Atha, Keisha Atha, Keilei Atha, and Lillian Medina.

UV Logistics filed a motion to compel an independent neuropsychological examination of four real parties in interest by UV Logistics' retained expert, Dr. Justin O'Rourke, Ph.D. In the motion, UV Logistics asserted that real parties had been examined by their own experts, Dr. Larry Pollock and Sandra A. Lopez, LCSW-ACSW and, although UV Logistics had requested examination of real parties by Dr. O'Rourke, real parties had failed to respond. UV Logistics claimed entitlement to the independent examination because real parties had placed their mental condition in controversy by alleging head injuries and other related conditions. UV Logistics cited to real parties' depositions to show the injuries they allegedly sustained in the incident made the basis of the suit. UV Logistics also stated that real parties' expert physicians had diagnosed real parties with the following impairments:

- Jeremy Atha – cognitive deficits in learning and memory, daily headaches, forgetfulness, severe depression and anxiety. Dr. Pollock recommended cognitive rehabilitation and psychotherapy,

- Keilei Atha – cognitive deficits in composite memory, verbal memory, visual memory, and reaction time, significant difficulty in learning and retaining new information, personality change, emotional changes, and significant daily pain. Dr. Pollock recommended cognitive rehabilitation for three months and 50 sessions of psychotherapy. Ms. Lopez also recommended behavioral health services, an outpatient support group, Trauma-Focused Cognitive Behavioral Health Therapy and family therapy,

- Lillian Medina – cognitive deficits in problem solving, reasoning, and memory. Dr. Pollock recommended cognitive rehabilitation for three months and 50 sessions of psychotherapy, and

3

- Keisha Atha – cognitive deficits in composite memory, verbal memory, composite memory, motor speed, and difficulty following precise written instructions, learning and retaining new information, time management, verbal fluency, speed of processing information, and frustration control. Dr. Pollock recommended cognitive rehabilitation for eight weeks and 50 sessions of psychotherapy.

Real parties opposed the motion.

The motion was set for a hearing and on October 14, 2022, the trial court signed an order granting the motion to compel, limiting the duration of each examination to 1-2 hours for clinical interview and 5-6 hours for standardized testing. Real parties filed a motion to reconsider and to modify the order to include certain safeguards, claiming that UV Logistics' proposed protocols for the examinations failed to protect their rights and to verify testing was conducted properly. The safeguards real parties requested were video and audio recording of the examinations and production of the underlying raw test data. UV Logistics opposed this modification of the order, asserting that real parties had offered no grounds supporting the requirement of recording Dr. O'Rourke's examination.

During the hearing on the motion, real parties argued that videotaping was needed to ensure the testing was actually done and to ensure that no one attempted to circumvent the attorney-client privilege. In support of their request for recording, real parties offered the affidavit of Dr. Richard Frederick who stated that recording of independent medical examinations was needed to protect real

parties from deliberate or inadvertent errors and would not violate any ethical or professional requirements. Real parties also asked the trial court for safeguards based on real parties' traumatic brain injuries but offered no evidence concerning these injuries.

UV Logistics opposed recording and advised the trial court that case law, such as *In re the Society of Our Lady of the Most Holy Trinity*,[4] supported UV Logistics' argument that real parties had not met their burden of proving the need for recording of the examinations and that the affidavit of Dr. Frederick did not provide the type of evidence needed.

The trial court responded:

> What I find persuasive when I go back through some of the briefing from - - it may have been the previous motion - - is some of the impairments that the [real parties] are alleged to have. And I understand they're allegations. But it talks about their memory, it talks about anxiety, forgetfulness.

> Under ordinary circumstances, again, if we were talking about a physical examination or even any other kind of neurological examination, we may not have the same concerns because we'd know that those particular plaintiffs could run out and go and tell their lawyers or get up and say, no, I'm not doing this and call their parent on the phone.

> I have concerns these [real parties], though, may or may not – - we don't know - - have the wherewithall to do that. And I think that's again, why I wanted and I am granting the examination. But I do believe these safeguards, and I believe under the facts of this case are

---

[4]      622 S.W.3d 1 (Tex. App.—Corpus Christi-Edinburgh 2019, orig. proceeding).

5

necessary. So I am going to order the medical examination with a videographer.

The trial court orally ruled that the examinations by Dr. O'Rourke would be videotaped but asked the parties to figure out the logistics and type of facility so that the audio and visual recording could be as inconspicuous as possible. The trial court asked for the parties to provide an order within five days.

UV Logistics then filed two supplemental responses objecting to recording. Real parties filed a reply to these responses, attaching a draft order for the trial court, and providing excerpts of Dr. Pollock's evaluations of the real parties. On December 16, 2022, the trial court held a "status conference" regarding the parties' scheduling of the evaluation and the recording logistics. However, the parties had not reached an agreement and UV Logistics continued to argue that real parties had not presented proof of special circumstances justifying recording of the independent examinations. The trial court signed a modified order the same day as the status conference, December 16, 2022, striking the prior order of October 14, 2022, requiring UV Logistics to provide the location where the neuropsychological examinations were to be conducted, and ensuring that the location had facilities permitting "inconspicuous video and audio recording of the examinations." Additionally, the trial court ordered UV Logistics to provide the raw data from the examinations when they produced the expert's reports.

6

UV Logistics filed a motion to reconsider the December 16, 2022 order, arguing again that real parties had not provided sufficient cause to require recording. On January 17, 2023, the trial court signed an order denying the motion for reconsideration and UV Logistics filed the petition for writ of mandamus.

## Analysis

### Standard of Review

To establish entitlement to mandamus relief, relators must show both that the trial court abused its discretion and that they lack an adequate remedy by appeal. *See Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004). A clear abuse of discretion occurs when the trial court's ruling is "so arbitrary and capricious that it amounts to clear error." *In re Bailey-Newell*, 439 S.W.3d 428, 431 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding). "With respect to resolution of factual issues or matters committed to the trial court's discretion, . . . the reviewing court may not substitute its judgment for that of the trial court." *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). "In other words, under an abuse of discretion standard, this Court should defer to the trial court's factual determinations if they are supported by the evidence." *In re Reedle*, No. 05-16-01483-CV, 2017 WL 944030, at *2 (Tex. App.—Dallas March 10, 2017, orig. proceeding) (mem. op.) (citing *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding)).

7

Less deference is afforded a trial court's determination of legal principles that control its ruling. *See Walker*, 827 S.W.2d at 840. A trial court has no discretion in determining what the law is or in applying the law to the facts of the case and thus, a clear failure by the trial court to analyze or apply the law will constitute an abuse of discretion. *See id.*

**Law Applicable to Independent Mental Examinations**

Requests for mental examinations of opposing parties are governed by Rule 204.1. *See* TEX. R. CIV. P. 204.1. Under Rule 204.1, "[a] trial court may compel an examination 'only for good cause shown' and 'when the mental or physical condition . . . of a party . . . is in controversy.'" *In re Sherwin-Williams Co.*, 668 S.W.3d 368, 370 (Tex. 2023) (quoting TEX. R. CIV. P. 204.1(a)(1)). The "good cause" requirement balances one party's right to a fair trial with the other party's right to privacy. *In re H.E.B. Grocery Co.*, 492 S.W.3d 300, 303 (Tex. 2016). To establish good cause, "the movant must show that (1) the examination is relevant to the issue in controversy and is likely to lead to relevant evidence, (2) there is a 'reasonable nexus between the examination and the condition in controversy,' and (3) the desired information 'cannot be obtained by less intrusive means.'" *Sherwin-Williams*, 668 S.W.3d at 371 (quoting *H.E.B.*, 492 S.W.3d at 303).

Whether to grant a motion for an independent mental examination is left to the trial court's discretion. *See In re Offshore Marine Contractors, Inc.*, 496

S.W.3d 796, 800 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding). But if a plaintiff has put his neuropsychological condition in controversy through expert testimony, denying the opposing party their own testing will seriously restrict the opposing party from discovering facts that might contradict the plaintiff's expert witness. *See id.* at 802–03. "Allowing both parties' experts to operate on a level playing field where they both interview [the plaintiffs] and conduct appropriate testing will allow the jury to consider the basis for their differing opinions." *Id.* at 803. However, the trial court retains discretion to place reasonable limits on this testing by specifying time, place, manner, conditions, and scope of the examination. *See id.* (citing to TEX. R. CIV. P. 204.1(d)).

**Texas Case Law**

UV Logistics argues that the trial court abused its discretion in imposing a recording requirement because real parties did not establish special circumstances or good cause for recording and because recording would impair their expert's ability to collect reliable data, would contravene professional standards, rules and norms, and would threaten the validity of his testing process. Finally, UV Logistics argues that the recording requirements denied them the same opportunity to examine the real parties that real parties' own expert enjoyed.

In support of their argument, UV Logistics cites to two Texas cases in which the courts granted mandamus relief under similar circumstances. *See In re the*

*Society of Our Lady of the Most Holy Trinity*, 622 S.W.3d 1, 20 (Tex. App.—Corpus Christi-Edinburgh 2019, orig. proceeding); *In re Redbird Trails Apts.*, No. 05-20-00284-CV, 2020 WL 3445811, at \*5 (Tex. App.—Dallas June 24, 2020, orig. proceeding) (mem. op.).

In *Society*, the trial court granted relator's motion to compel an independent examination by a board-certified forensic psychiatrist but added a handwritten interlineation stating that the court "will allow for a video recording of the examination." 622 S.W.3d at 8. The Society filed a motion for reconsideration arguing that recording the examination would "significantly impact the results of the examination." *Id.* This motion was supported in part by the affidavit of the physician who was to examine the plaintiff and he stated that the presence of a third party or a recording device "creates an atmosphere where the responses of the examinee are less forthcoming and less representative of the true mental state of the examinee." *Id.* at 8–9. Moreover, the physician stated the recording would "negatively impact the validity of [his] evaluation and impair [his] ability to provide to the court the most accurate and true expert analysis and resultant conclusions." *Id.* at 9. Finally, the physician stated that recording of his evaluation would not provide him with equal ability to evaluate the plaintiff under the same circumstances as that of the plaintiff's physician. *See id.* The trial court held a hearing and denied the Society's motion to reconsider. *See id.*

The Society challenged the trial court's order by filing a petition for writ of mandamus, arguing that the party seeking recording had the burden to demonstrate "special conditions" or good cause, that recording would destroy the validity of the examination, and that in the "battle of the experts," the Society would be "required to defend itself on an 'uneven playing field,' thereby depriving it of a fair trial." *Id.* at 12.

Citing to *Ornelas v. S. Tire Mart, LLC*, 292 F.R.D. 388, 395–97 (S.D. Tex. 2013) and *Holland v. U.S.*, 182 F.R.D. 493, 495 (D.S.C. 1998), the *Society* court noted that recording and third-party observation of examinations are disfavored by most federal courts. 622 S.W.3d at 13. The basis for those courts rejecting observation and recording is that it introduces "a human or mechanical presence—whether a lawyer, a stenographer, a tape recorder, or other instrumentality—[that] changes the nature of the proceeding." *Id.* (quoting *Ornelas*, 292 F.R.D. at 397). Most federal courts also find that recording affects the results of the examination. As stated in *Romano v. II Morrow, Inc.*:

> [A]n observer, a court reporter, or recording device would constitute a distraction during the examination and work to diminish the accuracy of the process. [An observer could] potentially distract the examining [physician] and examinee thereby compromising the results of the examination. Moreover, the presence of the observer interjects an adversarial, partisan atmosphere into what should be otherwise a wholly objective inquiry . . . . The Court finds that the presence of the observer would lend a degree of artificiality to the examination that would be inconsistent with the applicable professional standard.

11

173 F.R.D. 271, 273–74 (D. Or. 1997). Although *Romano* discusses an observer, the federal courts do not distinguish between recording and a third-party observer. *See Holland*, 182 F.R.D. at 495.

The *Society* court recognized another reason that recording should not be allowed—it "subverts the purpose of [Rule 204.1], which is to put both the plaintiff and the defendant on an equal footing regarding the evaluation of the party's medical or psychological status." 622 S.W.3d at 13. In other words, the *Society* court held that, where one party has been examined without recording devices, the other party should be given the same opportunity. *See id.*; *see also Favale v. Roman Catholic Diocese of Bridgeport*, 235 F.R.D. 553, 557 (D. Conn. 2006).

In *Redbird Trails*, the Dallas Court of Appeals relied on *Society* to hold that it was an abuse of discretion for the trial court to order videotaping of the independent examinations. *See* 2020 WL 3445811, at *4. The Dallas court based its decision on two findings: (1) the movant's expert should be allowed the same opportunity to develop his opinion as the opposing party's expert and in this case, real party's experts were not videotaped, and (2) real party did not provide any proof of special circumstances or a particularized need requiring videotaping of the examination.[5] *See id.* at *4 (citing to *Society*, 622 S.W.3d at 11).

---

[5]     Relators assert that neuropsychological examinations present different concerns that a physical or medical examination and in support of that argument, they cite *In re Genesis Marine, LLC*, No. 01-22-00028-CV, 2022 WL 2919935 (Tex.

**The *Society* case is well-reasoned and we will follow it**

Although the two Texas cases determined that recording of an independent examination should not occur absent a showing of special circumstances or a particularized need, real parties contend that these cases are unsound and urge this Court not to follow them. Because *Society* is the initial case with detailed analysis of the issue, real parties focus on *Society*, arguing that it is based on "select federal district court opinions," which real parties appear to contend are wrongly decided as they conflate the presence of third parties at independent examinations with inconspicuous recording. Real parties also dispute the *Society* statement that the majority of federal courts reject recording. Real parties state: "While there is certainly a dispute among federal trial courts across the country—as one would expect given that these are inherently discretionary issues to be decided on a case-by-case basis—declaring any sort of majority rule or presumption based on these cases is careless."[6]

---

App.—Houston [1st Dist.] July 26, 2022, orig. proceeding) (mem. op.). In that case, relators sought mandamus relief to require the trial court to permit the audio recording of an independent medical examination. *Id.* at *1. Because this case does not state why the petition was denied, it lends no support for relators' argument.

[6] In rejecting the majority federal rule cited by *Society*, real parties cite *Metropolitan Prop. & Cas. Ins. Co. v. Overstreet*, 103 S.W.3d 31, 35 (Ky. 2003) and *Boswell v. Schultz*, 175 P.3d 390, 395–96 (Okla. 2007). Both cases merely note that not all federal courts agree on whether recording of independent examinations should be allowed.

13

In reviewing federal cases addressing the recording of independent examinations, there are some that permit recording under exceptional circumstances. *See, e.g.*, *Schaeffer v. Sequoyah Trading & Transp.*, 273 F.R.D. 662, 664 (D. Kan. 2011) (holding that special circumstances supported recording when party had long history of mental illness that could prevent his communication with counsel); *Di Bari v. Incaica Cia Armadora, S.A.*, 126 F.R.D 12, 14 (E.D.N.Y. 1989) (permitting stenographer at psychiatric exam where plaintiff was not fluent in English and would have trouble communicating with his attorney). But recording of independent examinations is the exception, not the rule, and most federal courts addressing this question reject recording of an independent examination. *See, e.g.*, *Holland*, 182 F.R.D. at 495 ("However, the majority of federal courts have rejected the notion that a third party should be allowed, even indirectly through a recording device, to observe a Rule 35[7] examination."); *Jackson v. Harris Cnty, Tex.*, No. H-17-3885, 2019 WL 2544058, at \*1 (S.D. Tex. June 20, 2019) ("Courts generally disfavor third-party attendance or videotaping of mental examinations.").

---

[7] Federal Rule of Civil Procedure 35 permits a court to order a party whose mental or physical condition is in controversy to submit to a physical or mental examination but the order may be made only on motion for good cause and the order must specify the time, place, manner, conditions, and scope of the examination as well as the examinee. *See* FED. R. CIV. P. 35(a). This rule is quite similar to Rule 204.1, which also permits a trial court to order a party to submit to an examination only when the mental or physical condition of a party is in controversy and for good cause shown. *See* TEX. R. CIV. P. 204.1(a),(c).

In cases like *Holland* and *Tomlin v. Holecek*, federal courts have identified a variety of concerns with allowing recording of an independent examination. The presence of a third party adds a "degree of artificiality to the interview technique which would be inconsistent with applicable professional standards" and would be at odds with the Rule 35 purpose to provide a level playing field, which means that "the party requesting the examination should be free from oversight by the opposing party." *Holland*, 182 F.R.D. at 495. The court added that both the plaintiff's and the defendant's experts were bound by the same principles of professional integrity and methodologies of their discipline. *See id.* at 496. Finally, the court agreed with *Tomlin v. Holecek*, 150 F.R.D. 628 (D. Minn. 1993), in which the court "refused to promote 'the infusion of the adversary process into the . . . examining room,'" because the presence of a videographer could influence the examinee, "even unconsciously, to exaggerate or diminish his reactions" to the physical examination or fail to respond in a forthright manner. *Holland*, 182 F.R.D. at 496 (citing and quoting *Tomlin*, `150 F.R.D. at 631–34). The *Holland* court further stated that a videotape "would give Plaintiffs an evidentiary tool unavailable to Defendant, who has not been privy to physical examinations made of [plaintiff] by either his treating physicians or any experts he may have retained" and this further undermines the purpose of Rule 35. *Holland*, 182 F.R.D. at 496.

Federal courts considering this issued have found that psychological examinations raise special concerns. *See, e.g.*, *Tomlin*, 150 F.R.D. at 631–32. In deciding whether to permit recording of the examination of a security guard who was assaulted and suffered severe injuries and psychological harm, the court noted that no one had claimed that the examiner was unqualified "either because of her professional qualifications or her professional integrity." *Id.* at 631. Instead, the complaint was that the physician would conduct a "2-hour interview which [would] unnecessarily [expose] him to the unfettered inquiry of an 'agent' of the Defendants, whose sole function will be to disparage the value of his case." *Id.* In reviewing other federal and state cases on the question, the court observed that the great weight of federal decisions favored exclusion of a third-party observer and the state cases were "driven by perceived local customs or the provisions of a State statute." *Id.* Like in *Holland*, the *Tomlin* court also held that recording the examination would be inconsistent with the underlying purpose of Rule 35 and justified its holding on three grounds: (1) requiring a recording "would potentiate toward invalidating [the examiner's] evaluatory technique"; (2) Rule 35 is an attempt to level the playing field between the parties in their efforts to appraise the plaintiff's psychological condition; and (3) to require recording of a Rule 35 examination would "foster a greater degree of advocacy in the conduct of such examinations than is, already, unavoidably present." *Id.* at 631–34. Therefore, the

court ordered the psychological examination to go forward without any restrictions such as recording. *See id.* at 634.

Because the federal courts consider the presence of a recording device to be an indirect form of a third-party presence, though less intrusive, most of these courts reject recording, and particularly of psychological examinations, based on the risk of invalidating the evaluator's technique given that psychological examinations "necessitate an unimpeded, one-on-one exchange between the doctor and the patient." *Tomlin*, 150 F.R.D. at 631–32; *see also Schlenker v. G-and-R Integration Servs, Inc.*, No. 3:20-cv-237, 2021 WL 6805706, at *3, 6 (D. N. D. Oct. 4, 2021) (considering position statements of professional organizations such as The National Academy of Neuropsychology, the American Academy of Clinical Neuropsychology and the American College of Professional Neuropsychology that oppose third-party observers or recording, and ultimately finding "special circumstances sufficient to warrant recording of [doctor's] examination of [plaintiff]").

The federal courts also interpret Rule 35, which is similar to Texas Rule of Civil Procedure 204.1, as "a forthright attempt to provide a 'level playing field' between the parties in their respective efforts to appraise the Plaintiff's psychological state." *Tomlin*, 150 F.R.D. at 632. As in our case, the *Tomlin* plaintiff objected to permitting defendant's "hired gun" to have an "unfettered

17

opportunity to question [plaintiff] for two hours." *Id.* But the court stated that its decision was guided by the clear intent of the rule rather than "misapprehensions about its potential for misuse." *Id.* The court found that permitting the defense expert an unfettered, two-hour examination was "no greater than the liberality extended to the Plaintiff's consultants . . . ." *Id.* at 633. In addressing plaintiff's argument that permitting the presence of plaintiff's attorney or the recording of the defense expert's examination would assist plaintiff's counsel in questioning the defense expert, the court determined that this "would be endorsing, if not promoting, the infusion of the adversary process into the psychologist's examining room to an extent which is, in our considered judgment, inconsistent with the just, speedy and inexpensive resolution of civil disputes, and with the dictates of Rule 35." *Id*. at 634.

Finally, our survey of relevant cases demonstrates that some state courts do permit recording of independent examinations. *See, e.g., DiFiore v. Pezic*, 296 A.3d 425, 435, 437 (N.J. 2023) (holding that, based on state rule 4:19, trial court determines on case-by-case basis what conditions to place on defense examination, including who may attend and if it may be recorded, and if defendant objects, defendant should move for protective order to prevent recording or third-party observation), *see also Boswell v. Schultz*, 175 P.3d 390, 398–99 (Ok. 2007) (stating that Oklahoma statute authorizes examinee to bring third-party representative and

case law has previously permitted audio recording; also asserting that independent examinations are made with litigation in mind and, because defendant had not shown reason to limit recording to audio recording, medical examination could be videotaped).[8]

Real parties contend, as some courts have decided, that recording of an independent medical examination is merely a condition of the examination that trial courts have discretion to impose and that modern technology permits recording to be unobtrusive or inconspicuous and thus, any concerns about interference with the examination are unfounded. *See, e.g., J.H. v. Sch. Town of Munster*, 38 F. Supp. 3d 986, 989 (N.D. Ind. 2014) (observing that "in its discretion, a court may permit the presence of a recording device at the Rule 35 examination"). The federal courts that do permit recording find concerns "overblown or misplaced" as to recording causing a distraction, inhibiting candid communication, or failing to put defendant and plaintiff on an equal footing. *Brewer v. Norfolk S. Ry. Co.*, No. 4:21-CV-241-MLB, 2023 WL 1529382, at *1–2 (N.D. Ga. Feb. 3, 2023). The *Brewer* court explained that "[m]odern audio-

---

[8]    The *Boswell* court sets out the relatively few states with statutes that, as of 2007, specifically permit an external presence in the examination either by third-party presence or audio or video recording. *See* 175 P.3d at 390 n. 21 (Ok. 2007). The court also sets out the large number of states, including Texas, with more general statutes or rules, some of which permit recording. *Id.* at 397 n. 23–24. According to the review of the states in this case (in 2007), there is not a majority of states that uphold recording of examinations.

recording devices are small, unobtrusive, quiet, and . . . often forgotten after the first few minutes of a proceeding." *Id.* (internal quotation marks omitted) (citing *Underwood v. Fitzgerald*, 229 F.R.D. 548, 550 (M.D. Tenn. 2005), in which the court permitted audio recording as long as recording device was small, quiet, and unobtrusive). But the Texas cases considering this issue have not followed this minority view.

Having considered the Texas cases, as well as cases from other jurisdictions, we find *Society* to be well-reasoned and we reject real parties' contention that it is "unsound." The federal cases cited by *Society* primarily rely on Federal Rule 35, which is quite similar in language to our Rule 204.1, in that it permits one party to compel another party to submit to a physical or mental examination. *Compare* TEX. R. CIV. P. 204.1(a) *with* FED. R. CIV. P. 35. Both require the motion to state good cause for the examination and both require the trial court to specify the time, manner, place, conditions, and scope of the examination. *See* TEX. R. CIV. P. 204.1(c)-(d); FED. R. CIV. P. 35(a)(2). The purpose of Rule 204.1 is to balance the movant's right to a fair trial with the opposing party's right to privacy. *See H.E.B.*, 492 S.W.3d at 303. The stated purpose of Federal Rule 35 is "to preserve the equal footing of the parties to evaluate the plaintiff's [physical or mental condition] . . . ." *Diaz v. Con-Way Truckload, Inc.*, 279 F.R.D. 412, 419 (S.D. Tex. 2012) (internal quotation marks omitted). Although Federal Rule 35 and our Rule 204.1 are not

20

identical in language, both rules have the same purpose—to permit the movant the right to obtain medical or psychological evidence it may use to oppose the other party's evidence, and this preserves an equal playing field for the parties while balancing both parties' rights.

Moreover, *Society* sets out a reasonable rule for determining whether recording an independent examination should be permitted. As in most federal cases addressing this issue, the *Society* court stated that recording should not be permitted unless the movant establishes special circumstances or a particularized need for recording. *See Society*, 622 S.W.3d at 17. The *Society* court also noted the problems with recording such an examination without advising the party: "Videotaping Doe during a psychological examination performed for the purposes of litigation, without disclosing to her that the examination would be recorded, or the possibility and likelihood that the videotape would be viewed by third parties, presents fundamental problems pertaining to consent [and] privacy" and might not "comport with the rules of ethics and fiduciary responsibilities imbedded in the attorney-client relationship and the ethical and professional obligations of the examiner." *Id.* We will follow this requirement that a movant for the recording of an independent psychological examination provide evidence, including specific facts of special circumstances or a particularized need for the recording of the examination. *See id.*

21

**UV Logistics has not established an abuse of discretion**

According to *Society*, a party requesting recording must "show special circumstances or a particularized need, unique to her situation, supported by specific facts, that provide good cause for allowing the examination to be videotaped." *See id.* at 17. The kinds of special circumstances that might support recording include "where the examinee is a minor, does not speak the relevant language, or suffers from a disability that might impair his or her ability to communicate to counsel what occurs during the examination, or where evidence otherwise suggests that recording would be advisable." *Id.* at 14; *see Schaeffer*, 273 F.R.D. at 664 (special circumstances supported recording when party had long history of mental illness that could prevent his communication with counsel); *Greenhorn v. Marriott Int'l, Inc.*, 216 F.R.D. 649, 653–54 (D. Kan. 2003) (recording upheld where examiner had been previously disqualified for abusive behavior); *Di Bari*, 126 F.R.D. at 14 (permitting stenographer at psychiatric exam where plaintiff was not fluent in English and would have trouble communicating with his attorney); *Maldonado v. Union Pac. R.R. Co.,*, No. 09-1187-EFM, 2011 WL 841432, at *3 (D. Kan. Mar. 8, 2011) (permitting recording because party had third-grade education and was non-English speaker with impaired memory and cognitive abilities which impaired ability to communicate with counsel); *T.B. ex rel. G.B. v. Chico Unified Sch. Dist.*, No. CIV S-07-0926-GEB-CMK, 2009 WL

22

837468, at *2–3 (E.D. Cal. Mar. 26, 2009) (permitting recording of examination of autistic child on examiner's request because "with traumatized children, a child's facial expressions, body language, movements and behavioral enactments communicate medically significant information which can be captured on videotape" and there was "no indication in this case that the unobtrusive use of a video camera will make the examination of plaintiff adversarial.") (internal quotation marks omitted).

Good cause for recording an examination "is not established by the inherently adversarial nature of the examination, the fact that the examining physician was selected or paid for by opposing counsel, the theoretical potential for misconduct during the examination, the desire to obtain an accurate, dispute-free version of what was said, or the fear that the examination would become a de facto deposition." *Society*, 622 S.W.3d at 15 (citing *Hertenstein v. Kimberly Home Health Care, Inc.*, 189 F.R.D. 620, 629–31 (D. Kan 1999)).

Real parties initially provided no evidence meeting the "special circumstances" test. Real parties initially sought recording of the examination based on the following reasons: (1) the testing would give an agent of UV Logistics virtually unbridled access to the real parties; (2) there was no disclosure of what tests would be used; (3) the testing would not be supervised by the real parties' attorneys or a representative; (4) there would be no way to verify the

23

testing was conducted properly; and (5) the real parties had traumatic brain injuries. Real parties further claimed that testing without their attorney present was "a dangerous and intrusive circumvention of their rights and the attorney/client privilege." None of these arguments constituted proof of special circumstances unique to the individuals that supported recording of the neuropsychological examinations.

Although real parties offered the affidavit of Richard Frederick, Ph.D., his affidavit only offered general statements concerning his disagreement with allowing a defense expert "unfettered access to the Plaintiffs"[9] without recording. Dr. Frederick was not a physician who had examined real parties in this case and so his affidavit provided no special circumstances unique to the real parties

---

[9]      During the hearing held on October 26, 2022, real parties' counsel stated:

> We're going to send some folks that have traumatic brain injury, have depression, they've had a lot of problems since they got hit by the 18-wheeler; and the last thing we need to do is have somebody, a defense-hired expert, circumvent the attorney-client privilege, start asking all kinds of questions about things, and then give us a global report without us knowing exactly what took place. And that's why we submitted evidence in this case. And I know there's cases that talk about videotaping and if you're going to videotape, you need to bring evidence. We brought evidence.
>
> We brought evidence of Dr. Richard Frederick, and Dr. Frederick points out things by having watched on videotape some of the flawed testing that takes place and if we don't monitor it, there's going to be problems.

supporting recording of the examinations. Instead, Dr. Frederick merely opined in favor of recording examinations and asserting that recording is "*commonly* used" and a "*common* practice" and that it does not "disrupt the testing process, when modern equipment is used." These general concerns and opinions do not provide evidence of special circumstances or a particularized need, unique to each of the four real parties, that required recording of the neuropsychological examinations.

In contrast, UV Logistics offered the affidavit from their neuropsychologist, Dr. Justin O'Rourke, who asserted:

> [N]europsychological practice standards dictate that it is not permissible to allow video/audio recording, third party observation, or monitoring of clinical or forensic evaluations. I respectfully decline the request from Plaintiffs' counsel to record, videotape, or observe the neuropsychological evaluation for the following legal, scientific, and ethical reasons:
>
> a. Allowing third party observation, monitoring, or recording would violate neuropsychological practice standards and the standards put forth by my professional board, the American Academy of Clinical Neuropsychology/American Board of Clinical Neuropsychology (hereafter referred to as AACN). Dr. Frederick erroneously states in his affidavit that "The field of neuropsychology has now abandoned the argument that video cameras negatively affect test performance."
>
> . . . .
>
> However, Dr. Frederick does not cite the 2021 consensus statement from NAN [National Academy of Neuropsychology] and AACN that directly addresses third party observation recording . . . . [providing that third party observation in person or recorded] remains a potential threat to the validity and reliability of evaluation results, and violates test security guidelines, ethical principles and standards of conduct in the field.

25

b. The presence of a third-party observer (including recording devices) would constitute a non-standard administration of the tests and compromise the validity of the cognitive and psychological test results. Neuropsychological and psychological tests are standardized measure that are not developed in the presence of a third-party observer. If a third-party observer or recording device is present, then results from non-standard test procedures would be compared to normative data based on the standard test administration . . . and would limit the conclusions that could be drawn from the data. Indeed, it appears that Dr. Frederick and Plaintiffs' counsel are trying to compel an invalid and non-standard exam, especially when Dr. Frederick states in his affidavit that neuropsychologists who videorecord evaluations are obligated to "report that the assessment was conducted in a non-standard way (which is exactly what Dr. O'Rourke should do when he records his entire assessment)."

c. Third-party observation compromises the scientific integrity of test results and increases the risk of producing inaccurate information for the plaintiff, counsel, and court. Multiple peer reviewed scientific articles have been published on the effect of third-party observers (including recording devices) on the validity and reliability of neuropsychological/psychological tests.

. . . .

d. The Plaintiffs have completed prior cognitive evaluations in this case, and none of them included video/audio recording or third party observation as part of the exams.

. . . .

e. Dr. Frederick creates a strawman argument when he states that neuropsychologists are concerned about the effect of third party observation and video/audio recording on test results, but then they contradict themselves when they do not show the same concern about the effects of litigation or an examination by an "opposing" expert that Plaintiffs presumably distrust. . . . .—The effect of litigation is known and present in clinical exams . . . and [c]ompetent neuropsychologists aim to minimize sources of error and non-standard

26

test administration in their exams, which means excluding third party observers and video/audio recordings regardless of the context (i.e., clinical or forensic).

f. Allowing third party observation or recording violates professional ethics codes, practice standards, and the Act and Rules of the Texas State Board of Examiners of Psychologists (TSBEP).

When the trial court held a hearing on October 26, 2022 on real parties' motion to modify the original order to permit recording of Dr. O'Rourke's evaluations and when the trial court orally granted that motion, the trial court had before it no proof of special circumstances, but only had arguments of counsel and speculation about the need for recording. Speculation about special circumstances is not the proof required to show special circumstances justifying audio and video recording. *See Society*, 622 S.W.3d at 13–14.

However, further proof was presented to the trial court after the October 26 hearing. In their reply to UV Logistics' responses opposing the October 26 oral ruling, real parties for the first time provided some medical record excerpts concerning the impairments of the four real parties. Although these are not complete reports by Dr. Pollock, they include the summaries and conclusions for his evaluations of each real party and the excerpts include the signature of Dr. Pollock.

Exhibit G to real parties' reply is an excerpt from a report of an evaluation by Dr. Pollock of Jeremy Atha finding that he had cognitive impairments, anxiety,

27

forgetfulness, depression, and "significant neuropsychological impairments" with deficits in rote verbal learning and memory, making it difficult for him to recall specifics of information heard when the information is unrelated.

Exhibit H is an excerpt of an October 2021 evaluation by Dr. Pollock of Keisha Atha revealing "significant neuropsychological impairments" with deficits in "complex attention and processing speed (speed of auditory information processing), executive functioning (verbal fluency) . . . [and] cognitive dysfunction . . . forgetfulness, and increased depression and anxiety."

Exhibit I is an excerpt of a neuropsychological evaluation by Dr. Pollock of Keilei Atha revealing "Major Neurocognitive Disorder" and "significant neuropsychological impairments" including deficits in "complex attention and processing speed (speed of visual tracking, numerical reasoning, visual motor speed, and speed of auditory information processing), executive functioning (verbal fluency), learning and memory (rote verbal learning and memory and visual recognition memory), and language (receptive language and verbal fluency)." Dr. Pollock further concluded that Keilei's complex attention and processing-speed deficits make it difficult for her to process verbal and visual information, and short-term memory problems make it difficult for her to recall specifics of information she had heard if it is unrelated.

Exhibit J is an excerpt from the neuropsychological evaluation performed by Dr. Pollock on Lillian Medina in which Dr. Pollock determined that Medina had ongoing visual impairments, "significant neuropsychological impairments" including deficits in "complex attention and processing speed (speed of visual tracking and speed of auditory information processing), learning and memory (rote verbal learning and memory and logical verbal memory), as well as language (sentence repetition and oral spelling)."

To determine if this evidence meets the test set out in *Society*, it must "show special circumstances or a particularized need, unique to [real parties'] situation, supported by specific facts, that provide good cause for allowing the examination to be videotaped." *Society*, 622 S.W.3d at 17. Although the medical records include many similar issues shared by all of the real parties, such as anxiety, depression, and forgetfulness, the records also present neuropsychological issues, unique to each real party, that affect their ability to process information, remember information, and therefore, likely will affect their ability to communicate with their attorneys about the testing. *See id.* at 14 (asserting that courts have found special circumstances when evidence shows plaintiff suffers from impairment preventing ability to communicate with counsel what happened during examination). Based on the evidence of unique deficits in each of the real parties' verbal memory, processing speeds, and attention, the trial court could have concluded that real

29

parties had presented sufficient proof of special circumstances unique to each real party that supported recording of the evaluations by Dr. O'Rourke.

Although this evidence was presented after the trial court had orally ruled to permit recording of the examinations, it was presented to the trial court before it signed the December 16, 2022 order.[10] Thus, as detailed above, the trial court had adequate proof of special circumstances showing that each of the real parties had cognitive deficits that could likely affect their ability to communicate about the testing with their counsel.

In the mandamus context, we may not substitute our judgment for that of the trial court as it concerns "factual issues or matters committed to the trial court's discretion." *Walker*, 827 S.W.2d at 839; *In re Wyatt Field Svc. Co.*, 454 S.W.3d 145, 152 (Tex. App.—Houston [14th Dist.] 2014, orig. proceeding). We cannot substitute our opinion for that of the trial court even if we would reach a different conclusion. *See Hollander v. Capon*, 853 S.W.2d 723, 726 (Tex. App.—Houston [1st Dist.] 1993, writ denied). Because the trial court could have concluded that real parties presented sufficient proof of special circumstances or a particularized

---

[10] Relators do not challenge or brief in this Court the scope of the record considered by the trial court when it signed the December 16, 2022 order and the January 17, 2023 order. *See Guerinot v. Wetherell*, No. 01-12-00194-CV, 2013 WL 2456741, at *5 (Tex. App.—Houston [1st Dist.] June 6, 2013, no pet.). As a result, we also do not address it. *See CMH Homes v. Perez*, 340 S.W.3d 444, 454 (Tex. 2011) (declining to address potential ground for mandamus relief not briefed to the Court).

30

need, unique to each real party, UV Logistics has not established that the trial court abused its discretion.

Accordingly, we deny the petition for writ of mandamus. We lift the stay of all trial court proceedings granted on February 2, 2023. Any pending motions are dismissed as moot.

Richard Hightower
Justice

Panel consists of Chief Justice Adams and Justices Hightower and Countiss.